## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

OUTSIDE INTERACTIVE, INC., a Delaware Limited Liability Company,

      Plaintiff,

v.

JOSHUA BOLIN, an individual, and WESTLAKE SECURITIES, LLC, a Texas Limited Liability Company,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Outside Interactive, Inc. d/b/a Outside ("Outside"), for its Complaint against Joshua Bolin ("Bolin") and Westlake Securities, LLC ("Westlake Securities" and with Bolin, together, "Defendants") alleges as follows:

### Nature of the Action

1.    This is a civil action for an injunction, damages, and other appropriate relief arising out of Defendants' cybersquatting, trademark infringement, trademark counterfeiting, and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, relating to Defendants' efforts to use the domain name, outside.com (the "Infringing Domain Name"), which misappropriates Outside's intellectual property—including its long-registered OUTSIDE® trademark and family of marks—as a vehicle for ransom. Specifically, Defendants launched a website (the "Infringing Website") that

purports to offer the very same services as Outside under the Infringing Domain Name, resulting in—by Defendants' own admission—confusion by the public.

2.      Since 1976, Outside has been the world's leading provider of active lifestyle content, video, events, and services for outdoor enthusiasts and now reaches 80 million consumers across its network of 25 media, digital, and technology platforms. Given how seriously Outside takes protection of its intellectual property, Defendants believed Outside would pay any price to stop a potential competitor from holding the Infringing Domain and the confusion that Defendants intentionally manufactured. Defendants made frequent attempts to force Outside into agreeing including, for example, placing time deadlines on Outside to accept their offer, or either lose the Infringing Domain Name to a third party-buyer or face Defendants' own plan to use the Infringing Domain Name to directly compete with Outside illegally. Outside was unwilling to bend to their demands—which amount to illegal cybersquatting.

3.      Defendants' actions have caused, and unless enjoined, will continue to cause, irreparable harm to Outside and a substantial loss of goodwill in its valuable intellectual property.

## Jurisdiction and Venue

4.       This Court has original jurisdiction over the subject matter of the claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

5.      "Because neither the Lanham Act, 15 U.S.C. § 1051 *et seq.,* nor the Anti–Cybersquatting Consumer Protection Act ('ACPA'), 15 U.S.C. § 1125(d), provide for

nationwide service of process, the court looks to the Colorado long-arm statute to determine whether personal jurisdiction is proper." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014). Colorado's long arm statute provides that a defendant is subject to personal jurisdiction where he or she engages in the "transaction of any business within this state" or commits a "tortious act within this state." *Id.;* Colo. Rev. Stat. § 13–1–124. Defendants have admitted that Bolin owns the Infringing Domain Name and has both offered it for sale to Outside, a Colorado company, and threatened to sell the Infringing Domain Name should Outside fail to meet Defendants' demands. Westlake Securities also purports to do business in Denver on its website. As a result of doing business through the Infringing Domain Name and subsequent attempts to extort Outside, Defendants are subject to personal jurisdiction in Colorado. *See CrossFit*, 69 F. Supp. 3d at 1094 (personal jurisdiction warranted as a result of defendant's business in Colorado and "commission of a tort in Colorado," namely violation of the ACPA); *Your True Nature, Inc. v. JF Show Store*, No. 23-CV-00107-CNS-NRN, 2023 WL 2359234, at *2 (D. Colo. Feb. 14, 2023) ("[t]he Court finds that it has personal jurisdiction over the Defendants because said Defendants target their business activities toward consumers within Colorado via their digital storefronts.").

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and/or because a substantial part of the events giving rise to this action occurred in this judicial district.

**The Parties**

7.     Plaintiff Outside Interactive, Inc. is a Delaware corporation with its principal place of business located at 1600 Pearl St., Suite 300, Boulder, Colorado.

8.     Upon information and belief, Defendant Joshua Bolin is an individual residing in Austin, Texas. Bolin currently owns and controls a website with the domain name outside.com.

9.     Upon information and belief, Defendant Westlake Securities, LLC is a Texas Limited Liability Company with its principal place of business located at 2700 Via Fortuna, Suite 250, Austin, Texas and does business in Denver, Colorado.

**Background**

**A.     Outside's Intellectual Property Rights**

10.     For decades, Outside has been a leading provider of active lifestyle content, video, events, and services for outdoor enthusiasts. Outside currently reaches 80 million consumers across its network of 25 media, digital, and technology platforms.

11.     Outside has been using the trademark OUTSIDE® for informational publications pertaining to recreation since 1976, before the internet was founded. Outside's trademark rights and portfolio have since grown dramatically. It launched its magazine *Outside*, which provides information in the fields of outdoor sports, fitness, and recreational activities, in November 1994. Thereafter, it expanded with an online presence and television channel in the same fields in January 1995; travel, transportation, and retail store offerings in 1996; a book imprint in 2000; and travel agency services at least as early as January 2014—not to mention various other goods and services under dozens

of sub-brands offered by, and recognized as affiliated with, Outside. This includes "Scout – powered by Outside AI," Outside's AI-powered adventure concierge, which launched in January 2024.

12.     Outside owns all right, title, and interest in and to the marks in its OUTSIDE® family of marks, including but not limited to OUTSIDE®, OUTSIDE BOOKS®, OUTSIDE FILMS®, OUTSIDE GO®, OUTSIDE ONLINE®, OUTSIDE TELEVISION®, OUTSIDE TV®, OUTSIDE EVENTS®, and various designs and stylizations thereof as shown below:



(collectively, the "OUTSIDE® Marks ").

13.     As a result of (a) Outside's consistent and exclusive use of the OUTSIDE® Marks, (b) Outside's extensive advertising of its services offered under the OUTSIDE® Marks, and (c) the mass popularity and extensive reach of Outside platforms, Outside has created substantial goodwill in its OUTSIDE® Marks across the United States (and beyond).

14.     To further protect its valuable names and brand, Outside has obtained multiple federal trademark registrations for the OUTSIDE® Marks (the "Registrations") including, but not limited to, U.S. Registration Nos. 1507125, 2012332, 2025585, 2030603, 2304468, 2539895, 2546325, 2648063, 4672364, 4819937, 5292743, 5396636, 6073889, 6226313, 6850291, 7232896, and 7232897 for the goods and

services identified in Exhibit A. Outside obtained the first of these Registrations in 1988 based on a first use date in commerce of November 1, 1976.

15.     As identified in the Registrations, Outside has offered and continues to offer a wide variety of online services in connection with the OUTSIDE® Marks, including, for example: "[p]roviding information in the field of outdoor sports, fitness and recreational activities by means of a global computer network" since 1995 (Reg. No. 2648063); "[o]n-line retail store services on a global computer network featuring outdoor sporting equipment and apparel" since 1996 (Reg. No. 2546325); "[o]nline services on a global computer network, namely, providing for the purchase of transportation arrangements as part of adventure packages" since 1996 (Reg. No. 2546325); "Leasing access time to a computer database in the nature of a computer bulletin board in the field of outdoor sports and recreation" since 1996; and "GPS navigation services" since 2022 (Reg. No. 7232896).

16.     The Registrations for the OUTSIDE® Marks are in full force and effect, and the vast majority have become incontestable pursuant to 15 U.S.C. § 1065.

### B.     Defendants' Unlawful and Infringing Actions

17.     The Infringing Domain Name was first registered in 1993, after OUTSIDE® became a registered trademark of Outside, by a third party other than Defendants. The Infringing Domain Name continued to transfer hands until Defendant Bolin ultimately came to own it.

18.     Upon information and belief, Bolin is a co-founder and co-chief executive officer of StrategyWerks, a start-up IT company that offers web and application design

services. StrategyWerks' website refers to Bolin as a "serial entrepreneur" who was "often frustrated by the lack of talent and commitment he found from developers," resulting in his founding of StrategyWerks.

19.     In late April 2024, Bolin through David Hill, a managing director for Defendant Westlake Securities, which purported to act on behalf of Bolin, contacted Outside with a proposal: to sell the Infringing Domain Name to Outside. While Defendants continued to pitch to Outside, Outside discovered that in addition to Bolin's plan to commercialize the Infringing Domain Name by trying to sell it, Bolin had launched the Infringing Website.

20.     It became apparent that Defendants intended to extort Outside through this sale. Outside and Defendants engaged in a series of conversations from April to June 2024, attempting to negotiate a potential purchase at a reasonable price, one that would have to be much lower than the price of suing to obtain the Infringing Domain Name. During the course of these discussions, Defendants claimed the Infringing Website offered various services, including an AI-driven search engine[1] for outdoor activities, which they expressly indicated would threaten what Defendants incorrectly characterized as Outside's "old-school publisher"-based business model, and that acquiring them (at an exorbitant price) could "save Outside's business." Defendants made it clear that the Infringing Website would take traffic and readers from Outside and those familiar with the Outside brand, capitalizing and free-riding on Outside's reputation and brand, which was

---

[1] The operation of the Infringing Website bears a striking resemblance to ChatGPT and may reflect another party's large language model (LLM).

likely to confuse some segment of the public into thinking that Outside was associated with the Infringing Website. Indeed, they admitted that individuals had mistakenly contacted them through emails at the Infringing Domain Name, including providing sensitive information, on the false belief that they were corresponding with Outside. Defendants further explained that the Infringing Website had received significant traffic on the back of the Outside name and brand, thereby clearly capitalizing on the confusion of consumers.

21.     Defendants demanded that because of this confusion—created as a result of their unauthorized trading on Outside's goodwill in the OUTSIDE® Marks—Outside should pay a staggering number of between **15 million and 25 million dollars** to purchase the Infringing Domain Name. Defendants postured that other buyers (including a "large retailer" that purportedly would find such price "immaterial') had expressed interest in purchasing the Infringing Domain Name. Defendants leveraged this point to claim that unless Outside met Defendants' extortionate price, they would either proceed with their competing "AI-driven" business model or the Infringing Domain Name would be lost to another buyer. Defendants even went so far as imposing a time window on certain offers to purchase it; otherwise they would continue with their infringing business or sell the Infringing Domain Name to a competitor—tantamount to holding the domain name as a type of ransom.

22.     A review of the Infringing Website makes clear how Defendants manufactured the confusion underlying their demands. At least until around early August (shortly after Defendants' receipt of a communication from Outside's counsel), the

Infringing Website purported to, and did, offer the very same services that Outside offers in connection with its OUTSIDE® Marks. The "About Us" page of the Infringing Website page states "[u]tilizing advanced AI algorithms, we analyze your preferences, past activities, and search patterns to suggest the outdoor experiences most exciting to you and your family . . . making booking and buying the essentials for your outing faster and more intuitive than ever before." The Infringing Website also supposedly provided "real-time information on weather conditions, trail updates, and even crowd sizes, helping you make the most informed decisions" and gives consumers the ability to "[c]onnect with fellow outdoor lovers, share experiences, and get inspired." Further, the Infringing Website also purports to offer travel booking services for outdoor experiences, retail services for outdoor products, and location-based map services.

23.     Indeed, as a simple search on the Infringing Website shows, the Infringing Website returns content on outdoor experiences, travel planning, products and other similar information. The offering of identical and/or highly similar services, under the Infringing Domain Name that copies Outside's OUTSIDE® mark verbatim, is likely to mislead (and in fact, reportedly has misled) consumers that the Infringing Website is Outside's website or is otherwise affiliated with Outside, when it is not.

24.     Defendants' actions only enforce the improper association with Outside, evidencing their willfulness in trading on Outside's rights. The copyright notice on the Infringing Website identified "Outside" as the owner of the website—not Bolin, Outside.com, or any other third party:



Further still, searching the terms "outside" or "outside.com" in the search bar on the Infringing Website not only returned an article about planning outdoor experiences but also Outside's stylized OUTSIDE® mark, which depiction hyperlinks to an article about Outside's publication *Outside* and gives off the impression that outside.com is Outside's website:





25.     Upon realizing Defendants' intent to trade on Outside's goodwill and use the resulting likelihood of confusion to extort Outside, as opposed to good faith negotiation, Outside wrote to Defendants through counsel on June 28, 2024 to advise Defendants of their unlawful and infringing acts and to seek a resolution short of litigation. Bolin, without copying Westlake Securities, responded later that day, indicating it would not entertain any such resolution. On July 15, 2024, counsel for Outside sent one more letter to Bolin in a final attempt to avoid litigation. As of the date of filing, neither of the Defendants have replied to the latest communication they received.

26.     Rather, it appears that Defendants have escalated their unlawful conduct. Since sending the letter of July 15, 2024, the Infringing Website now features a "Partner With Us" page soliciting brand and affiliate partners. Notably, the notice identifying "Outside" as the owner of the Infringing Website was directly below the "Partner With Us"

hyperlink—a clear attempt at misleading potential partners seeking affiliate revenue into falsely believing they are doing business with Outside:



27.     Then, in a gesture of defiance at the suggestion that extortion and unfair competition might be illegal, in or around the first week of August, 2024, Bolin updated the content of the Infringing Website. For example, the "About us" page referred to the operator of the site being "an American software company dedicated to unraveling the intricacies of God's creation through the lens of advanced technology." Among other things, the updated Infringing Website claims it offers a "Gardening and Plants Large Language Model (GPLLM)"—an enormous artificial intelligence system that advertises as

its value the ability of this AI to tell you when it is best to water your plants and which solutions help kill pests.

28.     Nonetheless, a search for "Outside.com" has continued to return a description of Outside, a reference to Outside's website, and a link to Outside's website.

### Count I

### Cybersquatting in Violation of Section 43(d) of the Lanham Act
### (15 U.S.C. § 1125(d))
### (Against Defendant Joshua Bolin)

29.     Outside realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

30.     Outside owns valid and protectable trademark rights in the mark OUTSIDE® and the OUTSIDE® Marks, including all common law rights and all rights, title, and interest in and to the Registrations.

31.     Upon information and belief, following Outside's registration with the U.S. Patent & Trademark Office of Outside's OUTSIDE® Marks, Bolin registered, has sought to traffic in, and is using, without Outside's consent or authorization, the confusingly similar domain name outside.com, which incorporates the mark OUTSIDE® in its entirety. The Infringing Domain Name uses the mark OUTSIDE® together with the generic term ".com" and is therefore highly similar—if not identical—in sight, sound, and commercial impression to the OUTSIDE® Marks.

32.     The Infringing Domain Name resolves to the Infringing Website, which prominently features the mark OUTSIDE®, and is used by Bolin to sell, offer to sell,

market, and advertise services which are identical and/or highly similar to the services Outside offers in connection with the OUTSIDE® Marks.

33.     Based on his own admissions, after the OUTSIDE® Marks became distinctive in the marketplace, Bolin registered, traffics in, and is using the Infringing Domain Name in bad faith, with an intent to profit from and capitalize on the longstanding goodwill and reputation associated with the OUTSIDE® Marks, including, but not limited to, by using the domain name with the intent of diverting Outside's costumers to the Infringing Website and to extract an extortionate price from Outside to purchase the Infringing Domain Name.

34.     Bolin's acts constitute a violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

35.     Bolin's acts have caused, and unless restrained by this Court, will continue to cause, Outside to suffer damages and irreparable harm and injury, including to the goodwill, reputation, and business associated with the OUTSIDE® Marks, for which Outside has no adequate remedy at law.

**Count II**

**Trademark Infringement and Counterfeiting in Violation of Section 32(1) of the Lanham Act**
**(15 U.S.C. § 1114(1))**
**(Against Defendant Joshua Bolin)**

36.     Outside realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

37.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

38.     Outside exclusively owns valid, federally-registered trademark rights in the OUTSIDE® Marks.

39.     Consumers readily identify services offered under the OUTSIDE® Marks as being of the highest quality, and emanating exclusively from, and being sponsored and approved by, Outside.

40.     Outside has been using in commerce and obtained registrations for the OUTSIDE® Marks long before any infringing use by Bolin.

41.     Bolin has intentionally used in commerce the marks OUTSIDE.COM and OUTSIDE (the "Infringing Marks"), which copy verbatim, incorporate in their entirety,

and/or are highly similar to Outside's federally-registered OUTSIDE® Marks, in connection with the sale, offering, marketing, and advertising of services which are identical to the services offered by Outside in connection with the OUTSIDE® Marks, without Outside's consent or authorization.

42.     Bolin's use of the Infringing Marks in commerce, including in the sale and offering of services in connection with the Infringing Marks, is likely to cause confusion and/or mistake in the minds of the public, leading the public to believe that Bolin's services originate from Outside, or that Outside has approved, sponsored, or otherwise associated itself with Bolin or the services offered under the Infringing Marks, when it has not.

43.     Bolin has infringed and continues to infringe Outside's OUTSIDE® Marks with full knowledge of Outside's exclusive rights in the OUTSIDE® Marks and with deliberate intention to cause mistake and confuse or deceive the general public as to the affiliation, connection, or association of Bolin, or its services, with Outside.

44.     Bolin has infringed and continues to infringe Outside's OUTSIDE® Marks with deliberate intent to benefit from the goodwill associated with the OUTSIDE® Marks.

45.     Bolin's actions constitute an infringement of Outside's rights in the OUTSIDE® Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

46.     Upon information and belief, Bolin has made and will continue to make substantial profits to which he is not entitled to in law or in equity as a result of his infringement and counterfeiting.

47.     Bolin's infringing conduct has caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to Outside, for which Outside has no adequate remedy at law.

**Count III**

**Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act
(15 U.S.C. § 1125(a))
(Against Defendant Joshua Bolin)**

48.     Outside realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

49.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that:

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

50.     By making unauthorized use, in interstate commerce, of the Infringing Marks, Bolin has used a "false designation of origin" that is likely to cause confusion, mistake or deception as to the affiliation or connection of Bolin with Outside and as to the sponsorship or approval of Bolin's services by Outside, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51.     Bolin has used, in connection with its offering of services, false designations of origin and false and misleading descriptions and representations, including the Infringing Marks, which tend falsely to describe the origin, sponsorship, association, or approval by Outside of the services offered by Bolin.

52.     Bolin's offer of services under the Infringing Marks, which copy verbatim, incorporate entirely, and/or are highly similar to Outside's preexisting OUTSIDE® Marks, causes confusion and mistake, deceives and misleads the purchasing public, trades upon Outside's high-quality reputation, and improperly appropriates to Bolin the valuable trademark rights of Outside.

53.     Bolin's acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to describe and/or represent, in a false or misleading fashion, Bolin's services as those of Outside in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Further, by virtue of capitalizing on the hard-earned goodwill of Outside and its brand, Bolin's activities constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     Bolin's wrongful acts will continue unless enjoined by this Court.

56.     Bolin's acts have caused and will continue to cause irreparable injury to Outside.  Outside has no adequate remedy at law and is thus damaged in an amount not yet determined.

**Count IV**

**Contributory Trademark Infringement in Violation of Section 32(1) of the Lanham Act, Section 43(a) of the Lanham Act, and Common Law (15 U.S.C. §§ 1114(1) and 1125(a)) (Against Defendant Westlake Securities, LLC)**

57.     Outside realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

58.     Bolin directly infringed the OUTSIDE® Marks in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1) and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     As detailed above, including via acting as Bolin's agent for furthering his scheme to create an Infringing Website to use in competition with Outside unless Outside paid millions of dollars to buy the Infringing Domain Name, Westlake Securities facilitated and materially contributed to Bolin's unauthorized use of the Infringing Marks in connection with the sale, offering, marketing, and advertising of services which are

identical to the services offered by Outside in connection with the OUTSIDE® Marks, without Outside's consent.

60.     Westlake Securities had actual and constructive knowledge of Bolin's infringing activities. Westlake Securities enabled such activities, and facilitated and furthered the likelihood of and actual confusion that resulted therefrom.

61.     Upon information and belief, Westlake Securities intentionally induced and/or encouraged Bolin to infringe on the OUTSIDE® Marks so that Defendants would have negotiating leverage in attempting to sell the Infringing Domain Name to Outside.

62.     Upon information and belief, Westlake Securities has made and will continue to make substantial profits from the infringing use of the OUTSIDE® Marks, to which it is not entitled to in law or in equity

63.     Westlake Securities' activity has caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to Outside. Outside has no adequate remedy at law and is thus entitled to an injunction along with damages in an amount to be determined at trial.

## Jury Trial Demand

Plaintiff requests a trial by jury on all issues so triable of right pursuant to Fed. R. Civ. P. 38.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully demands:

A.  That the Court find that Joshua Bolin has engaged in cybersquatting under federal law;

B.  That the Court find that Joshua Bolin engaged in trademark infringement, trademark counterfeiting, false designation of origin, and unfair competition under state and federal law;

C.  That the Court find that Westlake Securities, LLC engaged in contributory trademark infringement under federal law;

D.  That the Court issue an injunction providing that, pursuant to 15 U.S.C. § 1116(a), Defendants and their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of or in concert with Defendants, jointly and severally, be enjoined through the world during the pendency of this action and permanently thereafter from:

   (i)  Using any reproduction, counterfeit, copy, or colorable imitation of Outside's OUTSIDE® Marks to identify any services not authorized by Outside;

   (ii)  Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Outside's business reputation;

   (iii)  Using a false description or representation including words, symbols, or artwork tending falsely to describe or represent Bolin's unauthorized services as being those of Outside or sponsored by or associated with Outside and from offering such services in commerce;

   (iv)  Further infringing the OUTSIDE® Marks by selling, marketing, offering for sale, advertising, promoting, or otherwise offering of any services not authorized by Outside under any simulation, reproduction, counterfeit, copy, or colorable imitation of the OUTSIDE® Marks;

(v)     Using any simulation, reproduction, counterfeit, copy or colorable imitation of the OUTSIDE® Marks in connection with the promotion, advertisement, sale, offering for sale, or offering of any unauthorized services in such fashion as to relate or connect, or tend to relate or connect, such services in any way to Outside, or to any services sold, offered, sponsored, or approved by, or connected with Outside;

(vi)    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services offered or sold by Defendant are in any manner associated or connected with Outside, or are sold, offered, licensed, sponsored, approved, or authorized by Outside;

(vii)   Secreting, destroying, altering, removing, or otherwise dealing with any books or records that contain any information relating to the selling, marketing, offering for sale, advertising, or promoting of all unauthorized services offered under the Infringing Marks; and

(viii)  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (viii).

B.      That an order be issued, pursuant to 15 U.S.C. §1125(d)(1)(C), that pending resolution of this matter, cease and desist from operating the Infringing Website, and Defendants provisionally transfer the Infringing Domain Name to Outside or, in the

alternative, be restricted from selling, transferring, or otherwise disposing of the Infringing Domain Name;

C.      That an order be issued, pursuant to 15 U.S.C. §1125(d)(1)(C), directing Defendants to permanently cease and desist from operating the Infringing Website and, transfer the Infringing Domain Name to Outside and/or forfeit or cancel the Infringing Domain Name;

D.      That the Court issue an order requiring Defendants to pay to Outside (i) all such actual damages and profits attributable to the cybersquatting committed by Bolin with respect to the Infringing Domain Name and those acting in concert with it in an amount to be proven at trial, trebled, as well as costs and attorney's fees, pursuant to 15 U.S.C. § 1117(a), or (ii) in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(d) of up to $100,000 for each domain name that Bolin has registered, trafficked in, and/or used in violation of 15 U.S.C. § 1125(d);

E.      That an order be issued, pursuant to 15 U.S.C. § 1118, directing Defendants to deliver up for preservation, storage, and/or destruction to Outside or its designated agent all unauthorized products, if any exist, and all marketing, advertising, and promotional materials in its possession or under its control bearing the Infringing Marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation of the OUTSIDE® Marks, and all articles by means of which such infringement occurred;

F.      That an order be issued directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that

any services sold or otherwise offered or promoted by Bolin are authorized by Outside or related in any way to Outside's services;

G.      That the Court issue an order requiring an accounting of all profits obtained by Defendants from Bolin's offer of services under the Infringing Marks and an order that Defendants hold all such profits in a constructive trust for the benefit of Outside;

H.      That the Court issue an order requiring Defendants to pay to Outside (i) all such actual damages and profits attributable to the infringements of the OUTSIDE® Marks by Bolin and those acting in concert with it in an amount to be proven at trial, trebled, as well as costs and attorney's fees, pursuant to 15 U.S.C. § 1117(a), or (ii) in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each trademark that Bolin has counterfeited and infringed;

I.      That the Court award prejudgment interest on all damages awarded by this Court; and

J.      That the Court award such other and further relief as the Court deems just and proper.

DATED:  August 14, 2024

Respectfully submitted,

By:  */s/ Carolyn Juarez*
Carolyn Juarez
Neugeboren O'Dowd PC
726 Front St., Ste. 220
Louisville, CO  80027
T: (720) 536-4904
F: (720) 536-4910
carolyn@nodiplaw.com

Eleanor M. Lackman
(Admission Pending)
Andrew Nietes
(Admission Pending)
Mitchell Silberberg & Knupp LLP
437 Madison Ave., 25th Floor
New York, NY  10022
T:  (212) 878-4890
eml@msk.com
afn@msk.com

*ATTORNEYS FOR PLAINTIFF*
*OUTSIDE INTERACTIVE, INC.*