IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02251-RMR

OUTSIDE INTERACTIVE, INC.,

    Plaintiff,

v.

JOSHUA BOLIN et al.,

    Defendants.

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.    ARGUMENT....................................................................................................................... 2
      A.    Outside Did Not Delay............................................................................................ 2
      B.    Outside is Likely to Succeed on the Merits at Trial of this Action.......................... 4

III.    CONCLUSION................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*,
  935 F.3d 1112 (10th Cir. 2019) ..................................................................................................7

*Am. Acad. of Husband-Coached Childbirth v. Thomas*,
  No. 10-CV-2899-CMA-MEH, 2010 WL 5184779 (D. Colo. Dec. 15, 2010)...........................6

*Archangel Diamond Corp. v. Lukoil*,
  123 P.3d 1187, 1197 (Colo. 2005)............................................................................................10

*Beer Nuts, Inc. v. Clover Club Foods Co.*,
  805 F.2d 920 (10th Cir. 1986) ....................................................................................................9

*Big O Tires, Inc. v. Bigfoot 4X4, Inc.*,
  167 F. Supp. 2d 1216 (D. Colo. 2001)...............................................................................3, 4, 7

*Crossfit, Inc. v. 5280 Realty, Inc.*,
  157 F. Supp. 3d 954 (D. Colo. 2016).....................................................................................4, 5

*CrossFit, Inc. v. Jenkins*,
  69 F. Supp. 3d 1088 (D. Colo. 2014)...................................................................................6, 10

*DSPT Int'l, Inc. v. Nahum*,
  624 F.3d 1213 (9th Cir. 2010) ....................................................................................................5

*Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr.*,
  LLC, 503 F. App'x 616 (10th Cir. 2012)...................................................................................8

*Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*,
  832 F.3d 15 (1st Cir. 2016).........................................................................................................7

*Outside Interactive, Inc. v. Bolin*,
  1:24-CV-02251-RMR, Order, ECF No. 10 (D. Colo. August 16, 2024)........................ *passim*

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) ..................................................................................................4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Treemo, Inc. v. Flipboard, Inc.*,
   53 F. Supp. 3d 1342 (W.D. Wash. 2014) .................................................................................8

**STATUTES**

15 U.S.C.
   § 1064(3) ..................................................................................................................................5
   § 1114(2)(D)(iv) .......................................................................................................................6
   § 1115(a) ..................................................................................................................................9
   § 1127 ......................................................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Evid.
   801(d)(2) ..................................................................................................................................8

## I.     INTRODUCTION

For all the posturing and distraction in Defendant Bolin's Response to Show Cause Against Issuance of Preliminary Injunction ("Response"), ECF No. 15, Bolin **does not dispute** the majority of the legal and factual findings in the Order of August 16, 2024, ECF No. 10 (the "Order") which, applying the same standard that governs the issuance of preliminary injunctions, found a temporary restraining order against Defendants[1] appropriate, including that:

- Bolin and Westlake Securities demanded 15 to 25 million dollars for the Infringing Domain Name, and repeatedly threatened to sell the Infringing Domain Name to a third party, often placing time deadlines, if their demands were not met (Order at 3-4, 7-8);

- Bolin registered, trafficked in, and used a domain name that is identical or confusingly similar to Outside's distinctive trademarks in a manner designed to compete with Outside (Order at 6-7);

- Consumers and potential business partners have contacted the Infringing Website believing they were corresponding with Outside (Order at 9-10);

- The Infringing Website provided the exact same services as Outside and the majority of the likelihood of confusion factors favor Outside (Order at 8-10);

- Outside will suffer irreparable harm to its goodwill and reputation (Order at 12);

- In the balance of equities, there is little potential harm to Defendants from an injunction (Order at 12-13); and

- The public interest is served by the injunctive relief requested (Order at 13).

All that remains are unsupported arguments and red herrings that do nothing to warrant a contrary result. As such, Outside respectfully requests that a preliminary injunction issue on the same terms in the Order for the pendency of this litigation.

---

[1] Terms not defined herein follow the same definitions in Outside's Combined Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"), ECF No. 2.

1

II.     ARGUMENT

    A.      **<u>Outside Did Not Delay</u>**

None of the events prior to 2024 could have put Outside on notice of Bolin's later actions in registering, using, and trafficking in the Infringing Domain Name to offer the very same services Outside does at the Infringing Website, much less Bolin's intention to extract 25 million dollars through its sale—the act that precipitated the need for injunctive relief—because Bolin, aided by Westlake Securities, did not actually commit those actions until 2024. *See* Declaration of Sam Gorman, ECF No. 2-3 ("Gorman Decl.") ¶¶ 3-6. Taking each in turn: The 2006 UDRP proceeding (*see* Declaration of James Juo, ECF No. 15 ("Juo Decl."), Ex. 6, ECF No. 15-4), involved a different party with a different website, applying a different standard. *See* Motion at 17 n.7 (collecting authority that uniformly holds UDRP decision are not binding on federal courts). Indeed, Bolin's use of the Infringing Domain Name in 2024 drastically differs from the content available on the website in 2006. *Compare, e.g.*, Juo Decl., Ex. 6 at 3 ("Nothing on the home page (or 'landing page') of the website indicates its source, and there is no copyright notice or 'about us' page") *with* Gorman Decl., Ex. A, ECF No. 1-2 ("About Us" page detailing overlapping services with Outside); Ex. C, ECF No. 1-4 (homepage with copyright notice identifying "Outside" as owner); Ex. D, ECF No. 1-5 (returning article about Outside with Outside's logo); Ex. B, ECF No. 1-3 (returning information on recreational activities and travel booking).

As for the supposed use by live-plant vendor Plantsborough, LLC ("Plantsborough"),[2] the only record evidence submitted by Bolin of an existing website at the Infringing Domain Name is

---

[2] Bolin provides no proof of his involvement with this entity, beyond stating he is a "member" and "participate[s]" in operation, nor does he identify when he became involved. *See* Bolin Decl. ¶ 4.

2

20136982.3

the specimen to the trademark application, filed July 9, 2020, for Plantsborough's registration (the "Plantsborough Registration"). *See* Juo Decl., Ex. 7, ECF No. 15-5 at 21-23. The Plantsborough Registration covers only plant-related services, *see id.*, which have nothing to do with anything competitive to Outside's services, including the informational services Bolin offers now. *See* Gorman Decl., Exs. A-F. And while plant retail services had previously been offered at the Infringing Domain Name, in or around October 2021, the website became inactive. Supplemental Declaration of Eleanor M. Lackman ("Supp. Lackman Decl.") ¶¶ 4-5, Exs. B-C. Thus, when Bolin and Outside corresponded later that year, it is evident Outside was attempting to discover Bolin's new plans with respect to the then-inactive Infringing Domain Name. Outside then sent a demand letter that attached exhibits showing Outside's objection to Bolin's use and made clear Bolin would be liable for trademark infringement if he followed through with any plans to offer competing services. Bolin Decl. ¶ 15 & Ex. 1 at 12-19. It appeared Bolin heeded this demand, as a search on any given day after his receipt of the demand letter would show that the Infringing Domain Name had remained inactive until late 2023. Supp. Lackman Decl. ¶ 5, Ex. C. Tellingly, Bolin includes no screenshots or any other record evidence supporting his contentions to the contrary. *See* Declaration of Joshua Bolin, ECF No. 15-2 ("Bolin Decl.") ¶¶ 6-10. Outside therefore would have had no need to seek a preliminary injunction or file suit during this period. *See, e.g.*, *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1228-30 (D. Colo. 2001) (alleged delay of many years did not defeat preliminary injunction where the defendant's use of the infringed mark was for different products in a different market and there was no evidence of direct competition).

Circumstances changed only in April 2024, when Bolin, prompted by his erroneous belief that Outside wanted to buy the domain, instructed Westlake Securities to contact Outside directly.

Bolin Decl. ¶ 24; Declaration of Adrianne Paulsen ("Paulsen Decl.") ¶¶ 2-3. The parties then engaged in discussions through July 2024 regarding the domain, during which time Outside first learned of the recently-launched Infringing Website offering competing services, Gorman Decl. ¶¶ 3-6, and Bolin demanded $25 million for its sale, Bolin Decl. ¶¶ 26-28, constituting new, separate violations of the Lanham Act. It is well-settled that the time spent trying to resolve a dispute does not constitute a delay that will defeat preliminary injunctive relief. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211-12 (10th Cir. 2009). Thus, the span of time from April to July 2024 consisting of negotiations between the parties and outreach by counsel to reach a resolution "[does] not alter the irreparable harm analysis." *Id.*; *Big O Tires*, 167 F. Supp. 2d at 1229-30.

  **B.**  <u>**Outside is Likely to Succeed on the Merits at Trial of this Action**</u>

  **Outside is Likely to Succeed on Its Cybersquatting Claim.** Bolin offers no argument as to the first two elements of cybersquatting: (1) the OUTSIDE® Marks are distinctive and (2) that he registered, trafficked in, or used the confusingly similar, if not identical, Infringing Domain Name. *Compare* Resp. at 14-15 *with* Order at 6-8 (collecting authority). Thus, the only question is whether Outside has demonstrated a likelihood of success as to Bolin's bad faith. Bolin does not dispute that "[t]he quintessential example of a bad faith intent to profit is when a defendant purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price." *Crossfit, Inc. v. 5280 Realty, Inc.*, 157 F. Supp. 3d 954, 957-58 (D. Colo. 2016) (citation omitted). And he admits he did attempt to sell the Infringing Domain Name to Outside for 15 to 25 million dollars. Bolin Decl. ¶¶ 26-28. This alone suffices to evidence his bad faith. *5280 Realty,* 157 F. Supp. 3d at 960. Rather than contend with this finding, *see* Order at 7-8, Bolin offers four arguments in response, supported by no case law. Each fails.

First, though Bolin claims there were *bona fide* offerings of retail services by Plantsborough at the Infringing Domain Name, this was evidently not the case from 2021 onward. Supp. Lackman Decl. ¶¶ 5-6. In any event, even assuming *arguendo* there may have been some legitimate business purpose (plant retail services) at some point years ago does not change that, beginning in April 2024, Bolin attempted to extort Outside through the sale of the Infringing Domain Name, evidencing his bad faith at that time. *See DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1220 (9th Cir. 2010) ("Though there was no evidence of anything wrong with [defendant]'s registration of the domain name to himself, the evidence supported a verdict that [defendant] subsequently, years later, used the domain name to get leverage for his claim for commissions"); *see also 5280 Realty,* 157 F. Supp. 3d at 960 (rejecting argument that defendant's use of domain name was in "any bona fide way related to" defendant's business). Indeed, Bolin's own statements in 2023 confirm that his intention in acquiring the domain was to sell it at an exorbitant price, not to offer *bona fide* services. *See* Supp. Lackman Decl. ¶ 8, Ex. F.

Second, a trademark registration does not indicate a lack of bad faith. Indeed, the Lanham Act specifically provides that registrations may be cancelled if "fraudulently" obtained or if the mark is abandoned, as evidenced by three years of nonuse. 15 U.S.C. §§ 1064(3), 1127. And again, a registration, applied for in 2020, for selling live plants online is not relevant to Bolin's bad faith use and trafficking in the Infringing Domain Name in 2024. *See DSPT Int'l*, 624 F.3d at 1220.

Third, Bolin states that he previously "turned down unsolicited offers from Plaintiff" for the Infringing Domain Name. Resp. at 15. Not only does Bolin fail to explain the relevance of this, but Outside was not responsible for those offers. *See* Paulsen Decl. ¶ 3. Indeed, the emails to which Bolin refers, supposedly evidencing these offers, **never identify the buyer.** *See* Bolin Decl., Ex.

5

4, ECF No. 15-1 at 32-42. They further show that, contrary to Bolin's assertions, the $25 million offer came from **Bolin**, with the GoDaddy broker writing to him: "I am pretty sure **you** put a value of $25,000,000 on it." *Id.* at 32 (emphasis added). Thus, the record plainly belies Bolin's contention that the demands were not exorbitant because they were "consistent with what Bolin believed [Outside] had offered unsolicited in the past," (Resp. at 15), as **he** originated the numbers and further, his demand was five times higher than the other buyer's "Best & Final" offer of $5 million, which was already "far above fair market value[.]" Bolin Decl., Ex. 4 at 32, 35. Moreover, this exchange demonstrates the third-party market for Infringing Domain Name, not only corroborating the testimony about Bolin's threatened ability to sell the Infringing Domain Name to a third party, but also confirming the need for an injunction prohibiting its sale.

Fourth, regardless of whether Bolin intended to cause confusion or misdirect consumers as Outside contends, *see* Gorman Decl. ¶¶ 4-5, the record confirms that he capitalized on the actual confusion and similarity to the OUTSIDE® Marks to drive price higher, after Bolin had been informed of potential infringement as early as 2021. Bolin Decl., Ex. 2 at 29 (noting "the volume of misguided traffic" to Infringing Domain Name); *id.* ¶ 28 (Bolin admitting the reason for a "sales price in the millions of dollars" was so that Outside could avoid the costs of switching to a "less desirable" domain name). This too evidences Bolin's bad faith. *See CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1101 (D. Colo. 2014); *Am. Acad. of Husband-Coached Childbirth v. Thomas*, No. 10-CV-2899-CMA-MEH, 2010 WL 5184779, at *4-5 (D. Colo. Dec. 15, 2010). Thus, none of Bolin's arguments warrant a finding on bad faith contrary to the Order. *See* Order at 6-8.[3]

---

[3] Bolin similarly cannot show "a knowing and material misrepresentation by [Outside] that a domain name is identical to, confusingly similar to, or dilutive of a mark" as required for reverse

**Outside Is Also Likely to Succeed on Its Infringement Claim.** Bolin does not dispute that Outside has a valid and protectable interest in the OUTSIDE® Marks,[4] as evidenced by its Registrations, and that the marks used by Bolin, OUTSIDE and OUTSIDE.COM, are highly similar to the OUTSIDE® Marks. *Compare* Resp. at 16-20 *with* Order at 8-9. Nor does Bolin contest that four of the six likelihood of confusion factors favor Outside: the marks' similarity (the most important factor); the similarity of the services; that consumers are not likely to exercise great care in selecting the services; and that the OUTSIDE® Marks' strength is demonstrated by half a century of use resulting in 80 million consumers currently using Outside's services that it offers in connection with the OUTSIDE® Marks. *Compare* Resp. at 16-20 *with* Order at 10-11 (collecting authority). These undisputed factors alone would warrant a finding of likelihood of success as to likelihood of confusion, as all factors must be weighed. *See Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115-16 (10th Cir. 2019) ("Our assessment of the other four factors does not overcome the visual similarity of the marks and the strength of Affliction's mark"); *Big O Tires*, 167 F. Supp. 2d at 1227 (granting preliminary injunction because "[a] majority of factors in the likelihood of confusion test weigh in favor of [plaintiff]"). References to offering the

---

domain name hijacking. *See* 15 U.S.C. § 1114(2)(D)(iv). Outside.com is plainly identical or confusingly similar to the OUTSIDE® Marks and Outside obtained rights in those marks well before the registration of the Infringing Domain Name in 1993 and Bolin's conduct 30 years later.

[4] Bolin refers to the OUTSIDE® Marks as a "mishmash" (Resp. at 2) but does not dispute these marks constitute a protectable family of marks. *See Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*, 832 F.3d 15, 28-30 (1st Cir. 2016). Moreover, Bolin fails to explain why it matters that Outside developed a stronger portfolio as time went on. At the time he presumably acquired the Infringing Domain Name—and indeed, at the time the Infringing Domain Name was first registered by anyone—Outside had already obtained a registration for its mark on the Principal Register, at a time when Bolin was 10 years old.

identical services using AI functionality (adopted after Outside's adoption of AI) are irrelevant, and Bolin fails to identify any authority showing that technological developments in the provision of services make the services different. *See* Resp. at 17-18.

Bolin's assertions with respect to the remaining two factors (actual confusion and intent) cut against him and, regardless, do not outweigh the factors above. As noted, that the Infringing Website's return of Outside's logo is the result of a purported "AI-hallucination" is irrelevant. *See id.* Regardless of why, Outside's logo does in fact appear on the Infringing Website along with significant detail about Outside (including that the Infringing Website has been operated by Outside since 1996) that is likely to cause consumers to incorrectly associate Outside with the Infringing Website. *See* Gorman Decl., Ex. D. Furthermore, Outside's infringement claims encompass Bolin's use of the marks OUTSIDE and OUTSIDE.COM, not just use of its logo. *See* Complaint ¶ 41. Thus, searching OUTSIDE.COM on search engines and receiving results connected to Outside (*see* Resp. at 17-18) in actuality evidences the confusion caused by Bolin's use of that mark. *See, e.g.*, *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1362 (W.D. Wash. 2014) (finding search results, along with misplaced emails and articles linking the parties' goods, evidenced actual confusion). Bolin's only other contention with respect to actual confusion is that the evidence is hearsay about "a few errant emails[.]" Resp. at 19-20. But "[t]he Federal Rules of Evidence do not apply to preliminary injunction" proceedings. *Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr.*, LLC, 503 F. App'x 616, 620 (10th Cir. 2012) (citation omitted). Besides, Bolin has now submitted opposing party statements (*i.e.*, not hearsay, *see* Fed. R. Evid. 801(d)(2)) admitting the instances of actual confusion and indicating their volume. *See, e.g.*, Bolin Decl. ¶¶ 13, 25 (Bolin admitting he received emails intended for Outside); *id.*, Ex. 1 at

8

19 (consumer and potential business partner inquiring about Outside magazine to Bolin); *id.*, Ex. 2 at 29 (Westlake Securities admitting the "volume of misguided traffic"). Though Bolin denies he intended to cause confusion, his intent can be inferred from his adoption of the Infringing Marks in spite of his knowledge of the OUTSIDE® Marks. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986). As for the argument that this is similar to the prior UDRP proceeding from nearly 20 years ago, as discussed above, federal courts are not bound by UDRP decisions and, in any event, Bolin's use of the Infringing Website changed drastically from the use in 2006. *See supra* Sec. II.A. Thus, each of the likelihood of confusion factors (as previously held) favors Outside. *See* Order at 9-11.

Finally, as noted above, the Plantsborough Registration for OUTSIDE.COM is limited to selling live plants over the Internet. *See supra* Sec. II.A. Considering that this use ceased in 2021 and Bolin never mentioned live plants in his threats, the argument that the registration somehow disproves a likelihood of confusion for Bolin's use in 2024 for completely different services is quite disingenuous. *See* 15 U.S.C. § 1115(a) (registration constitutes *prima facie* evidence only "in connection with the goods or services **specified in the registration**" (emphasis added)); *id.* §§ 1064(3), 1127 (registrations may be cancelled if abandoned; abandonment presumed after three consecutive years of nonuse). And this is nothing to say of Bolin's unauthorized use of the mark OUTSIDE for which Plantsborough does not have a registration. Thus, Bolin has presented no argument to disturb the finding that Outside is likely to succeed on its trademark infringement and unfair competition claims. *See* Order at 8-11.

**The Court Has Personal Jurisdiction Over Bolin.** Bolin contends that after directing Westlake Securities to approach Outside, a Colorado-based entity, and trying to pull $25 million

out of this Colorado-based entity's pockets, he was not engaging in an attempted transaction in the state or in a tortious act committed against a party in the state. Resp. at 20-23. This is wrong. *See Jenkins*, 69 F. Supp. 3d at 1094 (transaction of business and/or commission of a tort conferred personal jurisdiction"[e]ven if [defendant] were not a Colorado resident"). *Archangel Diamond Corp. v. Lukoil*, the case relied upon by Bolin, is easily distinguishable as there, the communications by the defendant directed at Colorado which formed the basis of the plaintiff's claim for personal jurisdiction, concerned disputes over real property **in Russia** that "did not arise when [Plaintiff] was a Colorado resident." 123 P.3d 1187, 1197 (Colo. 2005). Not so, here. When Bolin contacted Outside it had long-been a Colorado resident and Bolin's actions solely affect Outside in Colorado. Moreover, Outside did not initiate contact with Bolin, as Outside was not, nor ever identified as, the buyer in 2023. *See* Paulsen Decl. ¶¶ 2-3; Bolin Decl., Ex 4. And regardless of Bolin's false belief with respect to the identity of that buyer, rather than reconnecting with the broker whom he had been in contact with previously, Bolin instead purposefully reached out to Outside directly and even stated in subsequent discussions he "would be interested in remaining involved with the <*outside.com*> business after a sale to [Outside]" further evidencing his attempted transaction of business with Outside, a Colorado company. Bolin Decl. ¶¶ 24-25. He then committed the tort of cybersquatting by ransoming the Infringing Domain Name for $25 million, the effects of which were felt by Outside solely in Colorado. Thus, personal jurisdiction is established.

## III.   CONCLUSION

In light of the foregoing and for the reasons stated previously, Outside respectfully requests that the Court grant the requested preliminary injunction.

DATED:  September 6, 2024              Respectfully submitted,

By:  */s/ Carolyn Juarez*

Carolyn Juarez
Neugeboren O'Dowd PC
726 Front St., Ste. 220
Louisville, CO  80027
T: (720) 536-4904
F: (720) 536-4910
carolyn@nodiplaw.com

Eleanor M. Lackman
Andrew Nietes
Mitchell Silberberg & Knupp LLP
437 Madison Ave., 25th Floor
New York, NY  10022
T:  (212) 878-4890
eml@msk.com
afn@msk.com

*ATTORNEYS FOR PLAINTIFF OUTSIDE INTERACTIVE, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September 2024, I electronically filed the foregoing **Plaintiff's REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** with the accompanying **SUPPLEMENTAL DECLARATION OF ELEANOR M. LACKMAN IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (with Exhibits A-F)** and **DECLARATION OF ADRIANNE PAULSEN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system.

Copies of the foregoing were also sent via U.S. Mail to Westlake Securities, LLC at the following address, with a courtesy copy via email to bsmith@dunnsmith.com.

Westlake Securities, LLC
c/o Brian T. Smith
Dunn Smith LLP
811 Barton Springs Road, Suite 725
Austin, TX  78704

*/s/ Carolyn Juarez*
Carolyn Juarez
NEUGEBOREN O'DOWD PC
726 Front St., Ste. 220
Louisville, CO  80027
Telephone:     (720) 536-4900
Facsimile:      (720) 536-4910
E-Mail:          carolyn@nodiplaw.com

12