IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02251-RMR-NRN

OUTSIDE INTERACTIVE, INC., a Delaware Limited Liability Company,

Plaintiff,

v.

JOSHUA BOLIN, an individual, and
WESTLAKE SECURITIES, LLC, a Texas Limited Liability Company,

Defendants.

**REPORT AND RECOMMENDATION ON
DEFENDANT WESTLAKE SECURITIES, LLC'S RULE 12(b)(6) MOTION TO
DISMISS (ECF No. 20) and
DEFENDANT BOLIN'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION UNDER FED. R. CIV. P. 12(b)(2) (ECF No. 22)**

**N. REID NEUREITER
United States Magistrate Judge**

This Lanham Act case is before the Court pursuant to an Order, ECF No. 24, issued by Judge Regina M. Rodriguez referring Defendant Westlake Securities, LLC's ("Westlake") Rule 12(b)(6) Motion to Dismiss, ECF No. 20, and Defendant Joshua Bolin's Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2), ECF No. 22. Plaintiff Outside Interactive, Inc. ("Outside") filed responses, ECF Nos. 32, 33, and Westlake and Bolin filed replies, ECF Nos. 34, 35. The Court held a motion hearing on January 8, 2025. ECF No. 38.

The Court has taken judicial notice of the Court's file, considered the applicable federal statutes and case law, and makes the following Recommendation.

I. **BACKGROUND**[1]

    a. **The Parties**

Outside, a Delaware corporation with its principal place of business in Boulder, Colorado, "has been the world's leading provider of active lifestyle content, video, events, and services for outdoor enthusiasts and now reaches 80 million consumers across its network of 25 media, digital, and technology platforms." ECF No. 1 ¶¶ 2, 7, 10. Outside has used the trademark OUTSIDE® since 1976. *Id.* ¶ 11. The Complaint further alleges:

> 12. Outside owns all right, title, and interest in and to the marks in its OUTSIDE® family of marks, including but not limited to OUTSIDE®, OUTSIDE BOOKS®, OUTSIDE FILMS®, OUTSIDE GO®, OUTSIDE ONLINE®, OUTSIDE TELEVISION®, OUTSIDE TV®, OUTSIDE EVENTS®, and various designs and stylizations thereof as shown below:
>
> 
>
> (collectively, the "OUTSIDE® Marks ").

*Id.* ¶ 12. Outside has obtained multiple federal trademark registrations for the OUTSIDE® Marks. *Id.* ¶ 14.

---

[1] Unless otherwise noted, all factual allegations are taken from Outside's Complaint and Jury Demand ("Complaint"), ECF No. 1, and are presumed to be true for the purposes of the Motion to Dismiss. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Bolin, a Texas resident, owns and controls a website with the domain name "outside.com" (also referred to herein as the "Infringing Website" and "Infringing Domain Name," respectively). *Id.* ¶ 8. Bolin used Westlake, a Texas limited liability company, as an intermediary to attempt to sell the outside.com domain name to Outside. *Id.* ¶¶ 9, 19.

### b. Outside's Allegations

The outside.com domain name was first registered in 1993, after OUTSIDE® became a registered trademark of Outside, and Bolin eventually came to own it. *Id.* ¶ 17. In April 2024, Bolin, through David Hill, a managing director for Westlake, approached Outside regarding the potential sale of the outside.com domain name. *Id.* ¶ 19.

Outside learned at this time that Bolin had launched a website under the outside.com domain name that "offered various services, including an AI-driven search engine for outdoor activities." *Id.* ¶¶ 19–20. Outside alleges that outside.com

> returns content on outdoor experiences, travel planning, products and other similar information. The offering of identical and/or highly similar services, under the Infringing Domain Name that copies Outside's OUTSIDE® mark verbatim, is likely to mislead (and in fact, reportedly has misled) consumers that the Infringing Website is Outside's website or is otherwise affiliated with Outside, when it is not.

*Id.* ¶ 23. Moreover, Outside claims that "searching the terms 'outside' or 'outside.com' in the search bar on the Infringing Website not only returned an article about planning outdoor experiences but also Outside's stylized OUTSIDE® mark, which depiction hyperlinks to an article about Outside's publication *Outside* and gives off the impression that outside.com is Outside's website." *Id.* ¶ 24.

During negotiations, Defendants allegedly cited customer confusion "created as a result of their unauthorized trading on Outside's goodwill in the OUTSIDE® Marks" to

3

justify their demand of between $15 and $25 million for the outside.com domain name. *Id.* ¶¶ 20–21. Outside claims that Defendants threatened to either maintain the Infringing Website to directly compete with Outside or sell the Infringing Domain Name to another buyer if Outside did not pay the "extortionate price" within a certain time window. *Id.* ¶ 19.

In June and July 2024, Outside sent letters to Bolin "to advise Defendants of their unlawful and infringing acts and to seek a resolution short of litigation." *Id.* ¶ 25. Not only were those letters ineffective, Outside claims that Defendants "escalated their unlawful conduct" and updated the Infringing Website to feature a "Partner With Us" page soliciting brand and affiliated partners, which Outside claims is "a clear attempt at misleading potential partners seeking affiliate revenue into falsely believing they are doing business with Outside." *Id.* ¶ 26.

Bolin apparently updated the Infringing Website again in August 2024 in an attempt to distance it from Outside's business activities. *Id.* ¶ 27. However, Outside claims that "a search for 'Outside.com' has continued to return a description of Outside, a reference to Outside's website, and a link to Outside's website." *Id.* ¶ 28.

Outside brings four claims for relief:

- "**Count I**—Cybersquatting in Violation of Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)) (Against Defendant Joshua Bolin)";

- "**Count II**—Trademark Infringement and Counterfeiting in Violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)) (Against Defendant Joshua Bolin)";

4

- "**Count III**—Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Against Defendant Joshua Bolin)"; and

- "**Count IV**—Contributory Trademark Infringement in Violation of Section 32(1) of the Lanham Act, Section 43(a) of the Lanham Act, and Common Law (15 U.S.C. §§ 1114(1) and 1125(a)) (Against Defendant Westlake Securities, LLC)."

### c. Procedural History

Outside filed the Complaint, ECF No. 1, and a Combined Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2, on August 14, 2024. On August 16, 2024, Judge Rodriguez granted Outside's Ex Parte Application for Temporary Restraining Order ("TRO"), ECF No. 10, and Outside posted a bond soon thereafter, ECF No. 12. The TRO has been extended several times. ECF Nos. 30, 37, 42, 47. Outside's request for a preliminary injunction has been fully briefed but not yet ruled on.

Westlake and Bolin moved to dismiss on October 3, 2024. The Court will address each motion in turn.

## II. WESTLAKE'S RULE 12(b)(6) MOTION TO DISMISS (ECF No. 20)

### a. Legal Standard

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

5

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### b. Analysis

Westlake claims that Outside's single claim for contributory trademark infringement fails because (1) Outside does not plausibly allege that Westlake intentionally induced Bolin to infringe on the trademark or exercised control of Bolin's means of infringement, and (2) Bolin did not infringe on Outside's trademark and therefore there can be no contributory infringement on Westlake's part.

#### i. Outside Adequately Alleges Westlake Intentionally Induced or Knowingly Enabled Bolin's Infringement

The Supreme Court has determined that liability for trademark infringement can extend "beyond those who actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982). "Contributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable

6

remedial measures." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013). "When the alleged direct infringer supplies a service rather than a product," as is the case here, the Court "must consider the extent of control exercised by the defendant over the third party's means of infringement.'" *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 897 (D. Colo. 2020) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007)).

Westlake argues that Outside fails to plausibly allege that it did anything more than attempt to broker the sale of the Infringing Website on Bolin's behalf and this is insufficient to state a claim for contributory infringement. Specifically, Westlake claims that the Complaint does not allege that it induced or persuaded Bolin to infringe on Outside's trademarks, and that it is devoid of facts showing that Westlake exercised any degree of control over Bolin or the Infringing Website.

Outside counters that the Complaint sufficiently alleges that Westlake induced Bolin to undertake his infringing actions of setting up an Infringing Website using the OUTSIDE® Marks, and that Westlake encouraged and actively participated in the efforts to drive up the purchase price for the Infringing Domain Name.

At the motion to dismiss stage, the Court finds that Outside has the better argument. The Complaint does not merely allege that Westlake was a passive, disinterested intermediary between Bolin and Outside. Rather, Outside claims that the two defendants acted in concert. As Judge Rodriguez discussed in her August 16, 2024 Order granting the TRO:[2]

---

[2] The Court is aware that this Order is not binding law of the case. *See DTC Energy Grp., Inc. v. Hirschfeld*, No. 17-cv-01718-PAB-KLM, 2020 WL 1333090, at *4 (D. Colo. Mar. 23, 2020) (recognizing that because "preliminary injunctions are customarily

7

> Outside alleges that Westlake Securities has been complicit in the attempted extortion of Outside in the sale of the Infringing Domain Name. Westlake Securities initially approached Outside on behalf of Bolin in an attempt to sell the Infringing Domain Name to Outside. ECF No. 2-2 ¶ 3. In the parties' discussions, Westlake Securities, *equally with Bolin*, claimed that the Infringing Website offered various services, including the AI-driven search engine, and indicated that the Infringing Website would benefit from traffic and readers from Outside. Id. ¶ 4. Westlake Securities, *together with Bolin*, also indicated that they were getting "lots of emails" mistakenly at the Infringing Domain Name that were intended for Outside. *Id.* Westlake Securities participated in the demand for Outside's payment and received the correspondence from Outside advising it of its unlawful and infringing acts. *Id.* ¶ 10. These actions demonstrate Westlake Securities' knowledge of Bolin's infringement and that it did nothing to halt such infringement and indicate that Westlake Securities encouraged Bolin to undertake the infringement. This supports a finding that Westlake Securities has committed contributory infringement. *1-800 Contacts*, 722 F.3d at 1251.

ECF No. 10 at 11–12 (emphasis added).

At the very least, Outside has alleged that Westlake knowingly enabled, if not induced, Bolin's infringement. Westlake argues strenuously that the Complaint does not demonstrate that Westlake was in a position to take reasonable remedial measures to stop or otherwise control Bolin's actions. However, Outside maintains that Westlake was more involved in the extortion scheme than as a simple messenger or independent broker, and that a partnership of some sort existed between the two defendants. Outside should be permitted to explore that relationship to determine whether and to

---

granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits[,] . . . findings of fact and conclusions of law made by a Court granting or denying a preliminary injunction are generally not entitled to law of the case status, as they are not binding at trial on the merits") (citations, quotation marks, and alterations omitted). The Court is further aware that the order was granted ex parte and Judge Rodriguez did not have the benefit of Westlake's arguments here. Moreover, Judge Rodriguez cites a declaration attached to the TRO motion rather than the Complaint, although the allegations contained in the two are substantially the same. The Court cites Judge Rodriguez's Order for its persuasive value as to whether Outside's Complaint states a claim for contributory infringement.

8

what extent Westlake exercised control over the Infringing Website and Domain Name. Dismissal is not warranted at this time under Rule 12(b)(6).

### ii. Outside Adequately Alleges Direct Trademark Infringement

Westlake next argues that it cannot be liable for contributory infringement because the outside.com domain name does not infringe on Outside's trademark. This is not persuasive.[3]

Claims for trademark infringement under 15 U.S.C. § 1114 have three elements: "(1) [Plaintiff] has a protectable interest in the trademark; (2) [Defendant] has used an identical or similar trademark in commerce; and (3) [Defendant] has likely confused customers by using a similar trademark." *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014).

As to the first element, "Outside's Registrations for the OUTSIDE® Marks constitute 'prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce.'" ECF No. 10 at 8 (quoting 1-*800 Contacts*, 722 F.3d at 1238. "Second, Defendant Bolin has used highly similar trademarks to the OUTSIDE® Marks in commerce. *Not only does the Infringing Domain Name, outside.com, copy Outside's word mark OUTSIDE® verbatim in its entirety*, the Infringing Website also prominently features the word mark OUTSIDE® and purported to be owned by 'Outside.'" *Id.* at 9 (emphasis added). Third, as Judge Rodriguez explained,

> Outside has shown a likelihood of confusion. *See KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) ("It is evident . . . that § 1115(b) places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration . . ."). Courts examine six non-exhaustive factors

---

[3] The Court suspects that Westlake was aware of the weakness of its position on this issue as it failed to address Outside's counterarguments in its reply brief or at oral argument.

9

to determine likelihood of confusion: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019).

"[T]he degree of similarity is the most important factor," *id.*, and as noted above, the Infringing Website uses a mark which is similar to Outside's marks. Although the coloring and font is different, the Infringing Website identifies itself as "Outside" in large letters on the homepage. Turning to the next two factors, Defendants have admitted they intend to mislead consumers into believing the Infringing Website is affiliated with Outside, and further, that there has been actual confusion, with consumers and potential business partners contacting the Infringing Website and believing they were corresponding with Outside. *See* ECF No. 2-3 ¶ 4; *Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr., LLC*, 503 F. App'x 616, 621 (10th Cir. 2012) (citing misplaced consumer inquiries in upholding preliminary injunction); *Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.*, 385 F. Supp. 3d 1122, 1144 (D. Colo. 2019) (granting preliminary injunction on similar grounds).

The Infringing Website also purported to and did provide the exact same services that Outside offers, and for which it holds Registrations covering, including providing information, planning, and booking resources for recreational experiences, online community boards to connect with outdoors enthusiasts, online retail services of recreational products, and location-based mapping services. *See* ECF No. 2-3 ¶¶ 6–9; *Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.*, 385 F. Supp. 3d 1122, 1144 (D. Colo. 2019) (granting preliminary injunction, highlighting "substantially overlapping services"). Given the nature of an online marketplace, consumers are not likely to exercise great care in selecting these services, *especially considering the Infringing Domain Name and Infringing Website feature the OUTSIDE® word mark as well as provides Outside's content and links to Outside's website when searching for the terms "outside" or "outside.com."* Additionally, the search feature on the Infringing Website contain almost identical offerings of what Outside's Scout AI-driven search engine offers in a substantially similar layout. Finally, Outside has used and promoted its OUTSIDE® Marks continuously for nearly half a century, resulting in 80 million consumers currently using Outside's services that it offers in connection with the OUTSIDE® Marks, thus 11 demonstrating their commercial strength. *See* ECF No. 2-3 ¶ 2; ECF No. 3-2 ¶¶ 2, 4. Thus, the evidence establishes a likelihood of confusion—confusion that Bolin has admitted he intends to cause and has been successful in causing.

*Id.* at 9–11 (emphasis added).[4]

This Court likewise finds that Outside has adequately pled a direct infringement claim. Westlake's motion to dismiss should be denied.

### III. BOLIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(b)(2) (ECF No. 22)

Bolin argues that the Court cannot exercise personal jurisdiction over him and Outside's Complaint should be dismissed under Rule 12(b)(2).[5]

#### a. Legal Standard

Rule 12(b)(2) allows a defendant to challenge the court's personal jurisdiction over the named parties. Fed. R. Civ. P. 12(b)(2). Outside bears the burden of demonstrating that the Court has personal jurisdiction over Bolin.[6] *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). "[T]he plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (citation omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The Court's focus is upon the defendant's relationship with the District of Colorado and this litigation; "so long as it creates a 'substantial connection'" with this

---

[4] Again, the statements made in declarations cited by Judge Rodriguez track the allegations contained in the Complaint.

[5] The Court notes that 15 U.S.C. § 1115(d) permits in rem actions against a domain name that violates the rights of a trademark owner under certain circumstances. That provision does not confer jurisdiction in this case because the Infringing Domain Name is located in Arizona. See ECF No. 15-3.

[6] Westlake does not make jurisdictional challenges.

11

District, even a single act can support jurisdiction. *Leachman Cattle of Colo., LLC v. Am. Simmental Ass'n*, 66 F. Supp. 3d 1327, 1336 (D. Colo. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 462 (1985)). In considering whether the Bolin had sufficient contacts with this District to support the Court's exercise of personal jurisdiction, the Court must accept all well-pled facts and must resolve any factual disputes in favor of Outside. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### b. Analysis

For personal jurisdiction over a defendant to be proper, the plaintiff must establish that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Because "Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause," the Court need only decide whether the exercise of personal jurisdiction would be consistent with the requirements of federal due process. *Id.*

A court constitutionally may exercise personal jurisdiction in one of two ways, through either general jurisdiction or specific jurisdiction. *Hargrave v. Concord Moon, L.P.*, 278 F. App'x 853, 855 (10th Cir. 2008)

General jurisdiction is established only "if [a defendant's] contacts with the State are so continuous and systematic that [it] is essentially at home" in the forum. *XMission, L.C. v. Fluent Ltd. Liab. Co.*, 955 F.3d 833, 840 (10th Cir. 2020). Mere "continuous activity of some sort within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear Dunlop Tires*

12

*Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011). Rather, only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, Outside does not contend that Bolin is subject to general jurisdiction, so the Court will focus on specific jurisdiction.

The specific jurisdiction question is a two-step inquiry. *Benton*, 375 F.3d at 1075. First, a court must determine that the defendant has "purposefully directed [its] activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks omitted). Second, if the defendant's actions do create sufficient minimum contacts, then a court must "consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Benton*, 375 F.3d at 1075 (internal quotation marks omitted).

Bolin argues that Outside has failed to establish that he purposefully directed his activities at Colorado or performed some act by which he availed himself of the privilege of conducting activities in Colorado.[7] Outside maintains that it sufficiently alleged that Bolin purposefully directed tortious acts at Outside, a Colorado resident. For the following reasons, the Court finds that it can exercise specific personal jurisdiction over Bolin.

---

[7] Bolin's Motion to Dismiss does not address whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. He has therefore waived this argument. *See Cowden v. Bd. of Governors of Colo. State Univ. Sys. by & through Colo. State Univ.-Pueblo*, 622 F. Supp. 3d 1019, 1031 (D. Colo. 2022) ("A party 'waive[s] [an] issue by failing to make any argument or cite any authority to support his assertion.'" (quoting *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996)), *dismissed sub nom. Cowden v. Bd. of Governors for Colo. State Univ. Sys. by & through Colo. State Univ.-Pueblo*, No. 22-1293, 2022 WL 19078175 (10th Cir. Dec. 19, 2022).

13

Trademark infringement is considered an economic tort for the purposes of personal jurisdiction. *See Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F. Supp. 2d 1202, 1208 (D. Colo. 2012). In the tort context, the Court generally considers "whether the nonresident defendant 'purposefully directed' its activities at the forum state." *Dudnikov*, 514 F.3d at 1071. Under the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984), "purposeful direction exists when there is "an intentional action . . . expressly aimed at the forum state . . . with [the] knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1071 (citing *Calder*, 465 U.S. at 789–90).

In *Walden v. Fiore*, the Supreme Court reaffirmed the effects test but emphasized that that "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. 277, 285 (2014). Thus, the relationship between a defendant and the forum state "must arise out of contacts that 'the defendant *himself*' creates with the forum State," and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," such as a plaintiff. *Id.* at 277 (quoting *Burger King Corp.*, 471 U.S. at 475). "[A] plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated,'" *id.* at 279 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)), and "the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction," *id.* at 290. Rather, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting

14

*Burger King Corp.*, 471 U.S. at 475). In short, "*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state." *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014).

In this case, Outside adequately alleges that Bolin committed intentional acts of trademark infringement and cybersquatting. The question is whether his conduct was *expressly aimed* at Colorado. There can be no doubt that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011). Instead, Outside alleges that Bolin instructed Westlake, which does business in Colorado, to contact Outside and make an extortionate demand of $15 to $25 million for sale of the Infringing Domain Name. Thus, per the allegations, "Bolin's activities were designed specifically to injure a specific Colorado-based entity." ECF No. 32 at 8.

Outside cites several cases in support of its position that the Court can properly exercise personal jurisdiction over Bolin. In *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088 (D. Colo. 2014), Judge Marcia S. Krieger granted a motion for default judgment in favor of Crossfit and against Jenkins, a cybersquatter who was a resident of Colorado and formed a business here. Judge Krieger stated, "Even if Jenkins were not a Colorado resident, the court would have personal jurisdiction over him based on his activities in this state," which included "'owning' the website, offer[ing] it for sale to Crossfit, and threate[ning] to auction the domain." *Id.* at 1094. The Court agrees with Bolin that this is not particularly persuasive authority because it is dicta; the court in that

15

case clearly had personal jurisdiction over the Colorado resident who operated a Colorado company.

More sound is Outside's reliance on *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), and *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, No. 12-cv-02525-BLF, 2014 WL 5773197 (N.D. Cal. Nov. 5, 2014). In *Panavision*, the defendant owned hundreds of domain names that infringed on the trademarks of notable companies. 141 F.3d at 1319. He demanded $13,000 for the Panavision.com domain name, and Panavision sued. *Id.* The Ninth Circuit, applying the effects test, found personal jurisdiction:

> We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. . . . [T]here must be "something more" to demonstrate that the defendant directed his activity toward the forum state. Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered. Under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

*Id.* at 1322.

*Bittorrent, Inc.* involved similar facts to *Panavision* but was decided after *Walden*. The court stated,

> After careful consideration of Plaintiff's supplemental briefing, the Court agrees that *Walden* does not significantly limit the jurisdictional analysis in *Panavision*.
>
> The Court notes that cybersquatting, as is alleged here, has always been subject to a somewhat different personal jurisdiction analysis:
>
>> Although jurisdiction questions in most ordinary domain name disputes are analyzed according to the three-part [*Calder*] test . . . a special jurisprudence seems to have developed for

16

> cases involving so-called "cybersquatters" or "cyberpirates." In a substantial number of cases, these so-called "cyberpirates" or "cybersquatters" will purposely register the trademark of a well-known corporation as a domain name with the intention of later selling that domain name to the corporation for an extraordinary profit. . . . [C]ybersquatting cases have developed their own statutory and court-made rules.
>
> 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil § 1073.1 (Personal Jurisdiction and the Internet) (3d ed. 2002). As such, courts have routinely found the existence of specific personal jurisdiction where the defendant's alleged conduct amounts to a scheme targeted at a trademark owner designed to extort money from the mark owner for domain names that capitalize on typographical errors and user confusion. *See Facebook, Inc. v. Banana Ads LLC,* No. CV 11–0361 9–YGR KAW, 2013 WL 1873289, at *4 (N.D. Cal. Apr. 30, 2013) ("In sum, the Default Defendants made money by confusing Facebook users, including users in California, and capitalizing on this confusion—some of which was based on defendants' misuse of Facebook's marks, typesetting, and color scheme. This constitutes aiming their conduct at Facebook and this forum."); *see also Rhapsody Int'l Inc. v. Lester,* No. C13–05489 CRB, 2014 WL 709899, at *6–7 (N.D. Cal. Feb. 24, 2014); *Panavision,* 141 F.3d at 1327. Such is the case here.

*Bittorrent, Inc.*, 2014 WL 5773197, at *5–6.

Also in Outside's favor is the fact that *Walden* did not deal with torts committed online. Indeed, the Court made clear that "this case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." 571 U.S. 291 n.9.

Moreover, in *Dudnikov*, the Tenth Circuit held that personal jurisdiction existed in Colorado over non-Colorado defendants who sent a notice of claimed copyright infringement to eBay in California in a successful effort to halt a Colorado company's online auction of allegedly infringing items. *See Dudnikov*, 514 F.3d at 1067–68. The court reasoned that reasoned the takedown action was expressly aimed at a forum where the defendant had the intent of affecting the plaintiff and the defendant knew the

plaintiff resided in the forum. *Id.* at 1075. And in *Anzures v. Flagship Restaurant Group*, 819 F.3d 1277, 1282 (10th Cir. 2016), the Tenth Circuit addressed *Walden* but recognized that *Dudnikov* was still good law:

> In relevant part, we reasoned [in *Dudnikov*] that the defendants, who we assumed knew that plaintiffs' business was in Colorado, acted "with the ultimate purpose of cancelling plaintiffs' auction in Colorado" and so "expressly aimed" their conduct at Colorado. We noted that the defendants' actions were "performed for the very purpose of having their consequences felt in the forum state."

*Id.* (alterations and citations omitted).

The Court is persuaded by the reasoning in *Dudnikov, Panavision,* and *Bittorrent, Inc.*, and finds that Outside has sufficiently alleged that Bolin has taken an intentional action expressly aimed at the state of Colorado with knowledge that the brunt of the injury would be felt here. Bolin engaged Westlake, a Texas company that does business in Colorado, to act as his representative in his attempt to sell the Infringing Domain Name to Outside, a Colorado resident. Bolin, through Westlake, initiated the contact with Outside. Defendants threatened to operate the Infringing Website and offer the same services as Outside unless Outside agreed to pay them up to $25 million. Thus, Outside alleges that Defendants operated "a scheme targeted at a trademark owner designed to extort money from the mark owner for domain names that capitalize on . . . user confusion." *Bittorrent, Inc.*, 2014 WL 5773197, at *6. By "intentionally engag[ing] in a scheme to infringe [Outside]'s famous mark and force [Outside] to pay ransom for the Infringing Domain Name[]," Bolin has "evince[d] an intent to intentionally diminish the value of [Outside]'s trademark through customer confusion and frustration and, in turn, force [Outside] to eliminate such blemishes on its trademark by acquiring the Infringing Domain Name[] from [Bolin]." *Id.* This caused injury to Outside in Colorado by putting

18

Outside's "'name and reputation at [their] mercy.'" *Id.* (quoting *Panavision*, 141 F.3d at 1327).

"The cybersquatter is subject to suit in the forum where the trademark owner is located and experiences the brunt of the injury to its trademark." *Id.* at *7. Therefore, the Court concludes that Bolin has "purposefully directed" his conduct at Colorado.

Finally, the Court finds that the second requirement for specific personal jurisdiction—that Outside's alleged injuries arise out of activities that Bolin purposefully directed at Colorado residents—is satisfied here. But for Bolin's "tortious activity—which constituted months of negotiation culminating in an extortionate demand of $25 million dollars [sic]—at Outside, a Colorado resident," ECF No. 32 at 9, the injuries giving rise to the litigation would not have occurred.

Accordingly, Bolin's motion for dismissal under Rule 12(b)(2) should be denied.

## IV.  CONCLUSION

It is hereby **RECOMMENDED** that Defendant Westlake Securities, LLC's Rule 12(b)(6) Motion to Dismiss, ECF No. 20, and Defendant Joshua Bolin's Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2), ECF No. 22, be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file**

**and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 17th day of March, 2025.

*[signature: N. Reid Neureiter]*
_____
N. Reid Neureiter
United States Magistrate Judge