IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 24-cv-02251-RMR-NRN

OUTSIDE INTERACTIVE, INC., a Delaware Limited Liability Company,

    Plaintiff,

    v.

JOSHUA BOLIN, an individual, and
WESTLAKE SECURITIES, LLC, a Texas Limited Liability Company,

    Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION

    This matter is before the Court on the Recommendation of United States Magistrate Judge N. Reid Neureiter entered on March 17, 2025, ECF No. 48, addressing Defendant Westlake Securities, LLC's ("Westlake") Motion to Dismiss, ECF No. 20, and Defendant Joshua Bolin's Motion to Dismiss, ECF No. 22. Magistrate Judge Neureiter recommends that both Motions be denied.

    Both Defendants timely filed objections to the Recommendation, ECF Nos. 51, 52. Plaintiff filed responses to the objections, ECF Nos. 53, 54. The Court has received and considered the Recommendation, the Objection, the record, and the pleadings. For the reasons stated below, the Court overrules the Defendants' objections. Accordingly, the Court adopts the Recommendation.

## I.   LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). When no proper objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to

accept the recommendation."[1] Fed. R. Civ. P. 72(b) advisory committee's note to 1993 amendment.

## I.     ANALYSIS

The parties do not object to the factual or procedural background discussed in the Recommendation. Accordingly, the Court adopts and incorporates the factual and procedural background included within the Recommendation as if set forth herein.

### A.     Westlake's Motion to Dismiss

Westlake moves to dismiss under Rule 12(b)(6), arguing that Outside's claim for contributory trademark infringement fails because (1) Outside does not plausibly allege that Westlake intentionally induced Bolin to infringe on the trademark or exercised control of Bolin's means of infringement, and (2) Bolin did not infringe on Outside's trademark and therefore there can be no contributory infringement on Westlake's part. The Magistrate Judge found that at this stage, Outside sufficiently alleges Westlake intentionally induced or knowingly enabled Bolin's infringement, and Outside has adequately pled a direct infringement claim against Bolin. Thus, the Magistrate Judge recommended that the motion to dismiss be denied.

In its objection, Westlake argues that the Magistrate Judge erred in "finding that sufficient facts have been alleged that Westlake induced Mr. Bolin's infringement." ECF No. 52 at 4. Westlake reiterates the same arguments it made in its motion and reply and insists that "[t]here are no factual allegations suggesting that Westlake exercised any

---

[1] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review, Fed. R. Civ. P. 72(b). *See, e.g., Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 249 n.1 (D. Colo. 2014) (Daniel, J.).

3

control over Mr. Bolin, much less an amount of control that would have allowed Westlake to instruct Mr. Bolin to take the Website down or change its content" and "[t]here similarly are no factual allegations plausibly suggesting that Westlake induced Mr. Bolin into infringing on Outside's marks." *Id.* at 5.

As the Magistrate Judge correctly explained, "[c]ontributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013). "When the alleged direct infringer supplies a service rather than a product," as is the case here, the Court "must consider the extent of control exercised by the defendant over the third party's means of infringement.'" *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 897 (D. Colo. 2020) (quoting *Lockheed Martin Corp. v. Network Sol., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)).

Upon review of the Complaint, the Court agrees with the Magistrate Judge that Outside sufficiently alleges Westlake enabled Bolin to infringe on the mark while having reason to know that Bolin was infringing, and exercised control over Bolin's means of infringement. Specifically, the Complaint alleges both Westlake and Bolin claimed the Infringing Website offered various services that would threaten Outside's business and admitted that individuals had mistakenly contacted them through emails at the Infringing Domain Name on the false belief that they were corresponding with Outside. ECF No. 1 ¶¶ 20, 22. The Complaint also alleges that Westlake had knowledge of Bolin's infringing

4

activities and acted as his agent "for furthering his scheme to create an Infringing Website to use in competition with Outside unless Outside paid millions of dollars to buy the Infringing Domain Name . . . ." *Id.* ¶ 59. The Court agrees with the Magistrate Judge that, "[a]t the very least, Outside has alleged that Westlake knowingly enabled, if not induced, Bolin's infringement." ECF No. 48 at 8. Thus, at this stage, Outside has plausibly alleged a claim for contributory trademark infringement against Westlake. *See 1-800 Contacts*, 722 F.3d at 1249 ("[c]ontributory infringement occurs when the defendant . . . enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable remedial measures.") (citing *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013) (defendant was liable for contributory infringement "because he knew or had reason to know of the infringing activities and yet continued to facilitate those activities . . . without undertaking a reasonable investigation or taking other appropriate remedial measures")). Accordingly, the objection is overruled and Westlake's Motion to Dismiss, ECF No. 20, is denied.

### B.     Bolin's Motion to Dismiss

Bolin moves to dismiss under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over him because Outside has failed to establish that he purposefully directed his activities at Colorado or performed some act by which he availed himself of the privilege of conducting activities in Colorado. Magistrate Judge Neureiter rejected this argument, finding that the Court has specific personal jurisdiction over Bolin because "Outside has sufficiently alleged that Bolin has taken an intentional action expressly

5

aimed at the state of Colorado with knowledge that the brunt of the injury would be felt here." ECF No. 48 at 18.

In his objection, Bolin argues that the Magistrate Judge erred in finding that Bolin's actions were purposefully directed at the state of Colorado and by failing to consider whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. ECF No. 51 at 9. He argues that Outside's claims arise from a failed business negotiation, not from conduct that creates sufficient minimum contacts with Colorado to justify specific personal jurisdiction. *Id.* at 1. Bolin contends he did not specifically target Colorado, and that merely causing injury to a Colorado company is not enough. *Id.* at 9.

"The minimum contacts test for specific personal jurisdiction has two requirements: (1) a defendant must have purposefully directed its activities at residents of the forum state, and (2) the plaintiff's injuries must arise out of the defendant's forum-related activities." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020) (internal quotations and citation omitted). "If the minimum contacts test is met, [the Court] must then assess whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *Id.* Here, the Court agrees with the Magistrate Judge that Outside has sufficiently alleged Bolin purposefully established minimum contacts within Colorado, and further finds that the assertion of personal jurisdiction would comport with fair play and substantial justice.

First, Bolin contends that "[Outside] is still the only link between [Bolin] and the forum, which is not enough" and "[t]hat [Outside] is located in Colorado is merely 'random'

6

or 'fortuitous.'" ECF No. 51 at 8–9. It is true that "[t]he simple fact that an out-of-state defendant has committed a tort that caused economic injury to a forum resident does not necessarily establish the requisite minimum contacts with the forum state." *Spyderco, Inc. v. Kevin, Inc.*, No. 16-CV-03061-CMA-NYW, 2017 WL 2929548, at *3 (D. Colo. July 7, 2017) (citing *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1077–80 (10th Cir. 1995)). Rather, Outside must allege "something more" than mere foreseeable economic injury in the forum state from an intentional tort to demonstrate that Bolin had the requisite minimum contacts, and that "something more" must be that Bolin "expressly aimed" his conduct at Colorado, such that the forum state was the "focal point" of Bolin's actions. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008).

Here, Outside has sufficiently alleged "something more" than the mere foreseeable economic injury in Colorado—it alleges that Bolin instructed Westlake, which does business in Colorado, to contact Outside and make an allegedly extortionate demand of $15 to $25 million for sale of the Infringing Domain Name. While in conversation with Outside, Bolin and Westlake "claimed the Infringing Website offered various services, including an AI-driven search engine for outdoor activities, which they expressly indicated would threaten what Defendants incorrectly characterized as Outside's 'old-school publisher'-based business model, and that acquiring them (at an exorbitant price) could 'save Outside's business.'" ECF No. 1 ¶ 20. Outside alleges that "Defendants made it clear that the Infringing Website would take traffic and readers from Outside and those familiar with the Outside brand, capitalizing and free-riding on Outside's reputation and brand, which was likely to confuse some segment of the public into thinking that Outside

7

was associated with the Infringing Website." *Id.* Outside further alleges that Defendants "admitted that individuals had mistakenly contacted them through emails at the Infringing Domain Name, including providing sensitive information, on the false belief that they were corresponding with Outside." *Id.*

Thus, the Court does not find that this was the mere passive website that ultimately and randomly affected a Colorado-based entity. Rather, per the allegations, Bolin's actions amounted to a scheme to register the Infringing Domain Name for the purpose of extorting money from Outside, knowing that outside was a Colorado-based entity. Indeed, to effectuate his plan, he contacted Westlake, which does business in Colorado, to act as his representative in his attempt to sell the Infringing Domain Name to Outside. These actions had the known and intentional effect of injuring Outside in Colorado, where it has its principal place of business. *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (personal jurisdiction in California established where non-California resident "engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. . . . [and] had the effect of injuring Panavision in California where Panavision has its principal place of business"); *Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-CV-02525-BLF, 2014 WL 5773197, at *6 (N.D. Cal. Nov. 5, 2014) ("[C]ourts have routinely found the existence of specific personal jurisdiction where the defendant's alleged conduct amounts to a scheme targeted at a trademark owner designed to extort money from the mark owner for domain names that capitalize on typographical errors and user confusion . . . ." (collecting authority)); *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014) ("Even if Jenkins were not a Colorado

8

resident, the court would have personal jurisdiction over him based on his activities in this state" because "Jenkins has admitted to 'owning' the website, offered it for sale to CrossFit, and threatened to auction the domain") (dicta).  Accordingly, the Court finds that Outside has sufficiently alleged Bolin had minimum contacts with Colorado.

However, Bolin is correct that the Magistrate Judge was also required to consider whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. *Dudnikov*, 514 F.3d at 1080 ("Having determined the plaintiffs met their burden . . . of establishing minimum contacts . . . we must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.") (quotations and citation omitted). When considering this, the Tenth Circuit has held that "with minimum contacts established, it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quotations omitted). Courts "determine whether jurisdiction is reasonable by considering the following factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017) (citation omitted). Here, Bolin's motion did not identify any other considerations rendering jurisdiction unreasonable and, even in his objection, he fails to identify any factors that would impact this analysis. Accordingly,

9

the Court finds he has failed to present a compelling case that exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.

## II.   CONCLUSION

For the reasons set forth above and in the Recommendation, Defendant Westlake's Motion to Dismiss, ECF No. 20, and Defendant Bolin's Motion to Dismiss, ECF No. 22, are DENIED.

DATED:  July 22, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

10