IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02251-RMR-NRN

OUTSIDE INTERACTIVE, INC.,

    Plaintiff,

v.

JOSHUA BOLIN; WESTLAKE SECURITIES, LLC;
PSJ STRATEGYWERKS, LLP, and PLANTSBOROUGH, LLC,

    Defendants.

---

**PLANTSBOROUGH, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

Defendant Plantsborough, LLC ("Plantsborough" or "PB"), by and through counsel, hereby moves pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the claims brought against it by Plaintiff Outside Interactive, Inc. ("OI" or "Plaintiff") for lack of personal jurisdiction.

## INTRODUCTION

In 2024, Plaintiff brought claims against co-defendants Joshua Bolin and Westlake Securities, LLC, for cybersquatting, trademark infringement, unfair competition, and contributory infringement. Approximately one year later, OI amended its complaint to add Plantsborough as a party based on a theory of vicarious trademark infringement. OI's claim against Plantsborough cannot proceed in this forum as Plantsborough is not subject to personal jurisdiction in Colorado.

Plantsborough is a Georgia LLC formed by Edinborough, LLLP (a Georgia entity) to operate an online retail plant business from Georgia. Plantsborough intended to use the

1

domain <plants.com> for its retail site. However, when it was unable to acquire that domain, it purchased <outside.com> (the "Domain") in 2018. Plantsborough operated a retail plant site at the Domain from 2019 and 2021. Plantsborough also registered the standard character mark OUTSIDE.COM under Class 35 for a retail store service featuring live plants. (Movant's Appx. pp. 31-63 – outside.com Trademark Registration.) When the online plant business did not work, Plantsborough ceased business in 2021. After its operations closed, Plantsborough permitted an option for Joshua Bolin (a web developer who assisted in the plant business) to acquire the Domain for $3 million.

Since 2022, Plantsborough has conducted no business, it has paid and received no money, it has filed no tax returns, and it has no employees. Since Plantsborough ceased operations, Bolin—acting for himself—took actions with the Domain to further his own business interest. Plantsborough did not direct or control Bolin as he attempted to use the Domain with the intent to purchase it. Nor was Plantsborough involved in any activities related to the sale of the Domain, to OI or otherwise. Put differently, the relationship between Plantsborough and Bolin was no different than a car owner and one who rents the car or a landlord who rents a building to a tenant.

Based on the facts, not only is there no basis for holding Plantsborough vicariously liable for Bolin's actions, but as relevant to the present Motion, there are no grounds for subjecting Plantsborough to jurisdiction in Colorado based on Bolin's actions—which is what OI is attempting to do.

2

## RELEVANT FACTUAL BACKGROUND

Plantsborough's sole member is Edinborough, LLLP, also a Georgia entity. (Movant's Appx. at p. 1 – McCorkle Decl. ¶ 2.) The owners of the LLLP are members of the McCorkle family (Donald, Beverly, and Christopher who all live in Georgia), who also own one or more entities that operate a plant nursery in Georgia called McCorkle Nurseries. (*Id.* ¶ 3.) Edinborough entered into an agreement with Bolin in 2018 while forming a business to sell live plants at plants.com. Pursuant to the agreement:

> Edinborough agrees to form a limited liability company under the laws of the State of Georgia to be called "Plants.com, LLC," (hereinafter "Plants.com") whose sole purpose shall be to create, design, and develop the Ecommerce Site. Plants.com shall be organized as a limited liability company, under which Edinborough owns a one hundred percent (100%) Capital Interest in the limited liability company, and Partner will receive a seventeen percent (17%) Profits Interest in the limited liability company once all revenues equal all expenses of the limited liability company from its inception.

(*Id.* at pp. 8-9 – plants.com Agreement.)

Bolin, however, was unable to acquire the plants.com domain name. (*Id.* at p. 2 – McCorkle Decl. ¶ 7.) After the plants.com domain fell through, numerous other domains were considered, such as plantlife.com, grew.com, plantsbox.com, plantswire.com, buyplants.com, directlandscape.com, everyplant.com, sproutly.com, etc. (*Id.*; *id.* at pp. 65-66 – Email re: Josh's Alternative domain names.) Eventually, the decision was made to purchase <outside.com> (the "Domain"), which had been registered 33 years prior.[1] (*Id.* at

---

[1] While Plantsborough is not sued here for cybersquatting, the Amended Complaint fails to state a claim for cybersquatting against any person, and there is no valid basis for the Court to restrict the Domain. The Domain was registered in February 1993, before the magazine, *Outside*, had ever been published. The first element of a cybersquatting claim requires the plaintiff to show that its trademark was distinctive at the time of registration of the domain name. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research, (FAIR),* 527 F.3d 1045, 1057 (10th Cir. 2008). The allegations in the complaint of cybersquatting are scant,

3

pp. 29 – Domain Registrar Info; *id.* at 2 – McCorkle Decl. ¶ 7.) Around that time, a new agreement was drafted that was substantially similar to the plants.com Agreement, but contemplated using the Domain. (*See id.* at pp. 74-90 - outside.com Agreement[2].) Under this agreement, Plantsborough was created as the subsidiary entity under this agreement. (Movant's Appx. at p. 1 – McCorkle Decl. ¶ 2.) Bolin, who then resided in Augusta, was never a member or employee of Plantsborough. (*Id.* ¶ 5.) Instead, pursuant to the agreement, he was to receive a seventeen percent (17%) Profits Interest in Plantsborough if profits were realized after all expenses and investments were paid off. (*Id*; *id.* at p. 75 – outside.com Agreement; *id.* at pp. 26-27 - Email from Donald "Skeeter" McCorkle dated February 12, 2018). This triggering event never came to fruition. (*Id.* at 2 – McCorkle Decl. ¶ 5.)

On June 26, 2018, McCorkle Nurseries, Inc. paid for outside.com, and Plantsborough, LLC, was then formed in July 2018 to own it. Bolin was engaged to develop the e-commerce business at the Domain with no thought or intention to compete with the Plaintiff. (*Id.* ¶ 6.)

---

but there clearly is no allegation of trademark rights, distinctiveness, or bad faith when the Domain was registered in 1993. As one court in this District recently explained, "cybersquatting depends on who had the right in the first place. . . . Acquiring another's legal interest in property (intellectual or otherwise) is not squatting." *Mehdiyev v. Qatar Nat'l Tourism Council*, 532 F. Supp. 3d 1065, **1071, 73 (D. Colo. 2021) (citing *GoPets v. Hise*, 657 F.3d 1024, 1031-32 (9th Cir. 2011)); *see also Blair v. Automobili Lamborghini SpA*, 2023 U.S. Dist. LEXIS 122596, 2023 WL 4548352, at *2 (D. Ariz. July 14, 2023) (holding that cybersquatting is possible "only when a person other than the trademark owner registers a domain name that is confusingly similar to a trademark that is distinctive at the time of the domain name's registration"). OI's first word marks for "outside," Reg. No. 2546325 and 2648063, were not registered until 2002, 9 years after registration of the Domain. Thus, it cannot be said that OI's mark was distinctive in 1993, and OI's claim necessarily fails. *See JFXD TRX Acq LLC v. Trx.Com*, No. CV-23-02330-PHX-ROS, 2024 U.S. Dist. LEXIS 4259, at *6 (D. Ariz. Jan. 8, 2024) ("[I]f a domain name is registered before a particular trademark exists, the trademark owner cannot assert a viable cybersquatting claim against the domain name owner.").

[2] Plantsborough is not aware of a fully executed version of the outside.com Agreement.

Plantsborough filed a trademark application with the U.S. Patent and Trademark Office ("USPTO") on July 9, 2020, for the OUTSIDE.COM mark for use with "On-line retail store services featuring live plants." (*Id.* at 3, ¶ 9; *id.* at pp. 71-72 – USPTO Trademark Registration outside.com.) No opposition was filed, and the USPTO issued the OUTSIDE.COM mark as U.S. Registration No. 6270864 on February 16, 2021. (*id.* at pp. 71-72 – USPTO Trademark Registration outside.com.) There was never any intention to cybersquat or compete with Plaintiff, but only an intention to operate a plant business from the Domain. (*Id.* at 5 – McCorkle Decl. ¶ 26.)

Plantsborough engaged in the business of selling live plants from 2019 through 2021 before determining that the venture would not be cost-effective. (*See id.* at 3, ¶ 13.) It contemplated selling the Domain, but Bolin requested the opportunity to develop a business using the Domain and purchase it for $3 million. (*Id.* ¶¶ 14, 24; *id.* at p. 68-69 – May 2021 email chain Re: Note on Outside.com.) PB agreed that Bolin would have an option to purchase the Domain for $3 million, and he thereafter set out on his own and with his company StrategyWerks to create a platform that worked like Pinterest and Shopify. (*Id.*) Bolin worked on his own from that time with the Domain only sporadically checking in with the McCorkle family. Plantsborough's only involvement in Bolin's new venture would only ever be to "sell plants as a partner," if that business made sense (*Id.*)

Plantsborough ceased operations, and no more money flowed into or out of Plantsborough after 2021. (*Id.* at p. 3-4 – McCorkle Decl. ¶¶ 13, 16.) While Plantsborough remained the technical owner of the Domain, the Domain was used, controlled and modified by Bolin and StrategyWerks during the time period 2021 through 2025, just as a tenant might

5

use property or a lessee might drive a rental car. (*Id.* ¶ 20.) Plantsborough has had no knowledge, interactions, or dealings with StrategyWerks, and the limited contacts with Bolin since 2021 are generally reflected in the text chain filed in this lawsuit between Ben McCorkle and Bolin. (*Id.* ¶¶ 17-21.) Bolin apparently had numerous communications with GoDaddy in 2023 about potentially selling the Domain in the range of $5 million to $25 million, but Plantsborough had no knowledge of those communications until late 2025. (*Id.* ¶ 22). No business was conducted by Bolin in the name of Plantsborough, he gave no financial reporting to Plantsborough, accepted no money from Plantsborough, and paid no money to Plantsborough during the period 2021 through 2026. (*Id.* ¶ 23).

### **Specific Allegations in the Amended Complaint Related to Personal Jurisdiction**

In order to support its assertion of personal jurisdiction over Plantsborough in Colorado, Plaintiff alleges "upon information and belief," that "Bolin is an agent of Plantsborough" and/or acted "on behalf of Plantsborough" and so Plaintiff alleges in conclusory fashion that "Plantsborough itself thus committed intentional acts, which have already been adjudicated to give rise to personal jurisdiction, through the acts of Bolin as its agent." (ECF 102 ¶ 5.) However, there is no well-pled factual allegation that Bolin did anything on behalf of Plantsborough or as agent for Plantsborough after 2021. Nor could there be. (*See* Movant's Appx. at p. 6 – McCorkle Decl. ¶ 33; *see also* ECF 90-1 at 43 ("StrategyWerks has no relationship with Plantsborough, LLC").)

Plaintiff makes reference to the 2018 agreement between Edinborough and Bolin to claim agency (ECF 102 ¶ 21), but the clear facts are that the agreement pertained to the 2019-2021 live plant business, it did not cover any subsequent activity by Bolin that did not

6

involve the sale of live plants. There is no agreement between Plantsborough and Bolin that applies to his conduct post-2021, except that he may purchase the Domain for $3 million. (Movant's Appx. at pp. 3-5 – McCorkle Decl. ¶¶ 14, 25.) The intent to sell plants online is the only intention that Plantsborough ever formed or acted on with respect to the Domain. (*Id.* ¶ 26; ECF 102 ¶ 22 "in or around the end of 2021, Plantsborough ceased its operations of selling plants at the [Domain].").

Plaintiff also points to some communications between Ben McCorkle and Bolin as proof of agency, but the texts do not demonstrate agency in any respect. (ECF 102 ¶ 29.) Ben McCorkle, a son of an owner of Edinborough, did have some limited telephone and text communications with Bolin attempting to determine if he planned to exercise his option to purchase the Domain. (ECF 91 at 36-63.) However, Plantsborough was never in control of Bolin and was never informed that the Domain was listed for sale to any third party. (Movant's Appx. at p. 6 – McCorkle Decl. ¶ 35; *see also* ECF 91 at 36-63.)

Plaintiff alleges that in "October 2023, Bolin engaged Hill at Westlake Securities for assistance in brokering a deal regarding the Infringing Domain Name." (ECF 102 ¶ 27.) As further evidence of the lack of agency, Plantsborough had no knowledge of any interaction between Bolin and Westlake. (Movant's Appx. at p. 5-6 – McCorkle Decl. ¶¶ 27, 35.) Plantsborough has itself never had any communications with Westlake or Hill. Plantsborough has never had any communications with OI. (*Id.* ¶ 35.)

7

## ARGUMENT

### I. Plaintiff's Claims Against Plantsborough Should Be Dismissed for Lack of Personal Jurisdiction.

Plaintiff bears the burden to show the Court has personal jurisdiction over each defendant. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1069 (10th Cir. 2008). It may make a prima facie showing by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). The Court may accept the well-pled facts of the Complaint to the extent they are not refuted by the Defendant. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id*. (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)). District courts have discretion whether to conduct an evidentiary hearing to determine personal jurisdiction. *Dudnikov*, 514 F.3d at 1069.

"Because neither the Lanham Act, 15 U.S.C. § 1051 *et seq.,* nor the Anti–Cybersquatting Consumer Protection Act ('ACPA'), 15 U.S.C. § 1125(d), provide for nationwide service of process, the court looks to the Colorado long-arm statute to determine whether personal jurisdiction is proper." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014). Colorado's long-arm statute, C.R.S. § 13-1-124, extends jurisdiction to the maximum extent permitted by the Due Process Clause. C*GC Holding Co., Ltd. Liab. Co. v. Hutchens*, 824 F. Supp. 2d 1193, 1198 (D. Colo. 2011).

"Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not

8

offend 'traditional notions of fair play and substantial justice.'" *Klein Frank, P.C. v. Girards,* 932 F. Supp. 2d 1203, 1210 (D. Colo. 2013) (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)). "Minimum contacts" are established where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted). Upon a finding of sufficient minimum contacts, the Court must determine "whether the exercise of personal jurisdiction over a defendant is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings, Inc.,* 149 F.3d at 1091 (citation omitted).[3]

The Court may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Id.* at 1091 (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985)). Specific jurisdiction is established by a three-part test: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed itself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1160-61 (10th Cir. 2010). The Tenth Circuit has recognized that "'a principal *may* be subject to the jurisdiction of the court because of the activities of its agent within the forum state,' but this agency theory

---

[3] OI has not argued that Plantsborough is subject to general jurisdiction, nor could it, as Plantsborough is not incorporated in Colorado and does not have its principle place of business in Colorado, As such, it cannot be said that it is essentially at home in Colorado. *See Daimler AG v. Bauman*, 571 U.S. 117, 137-139 (2014).

9

applies only when the agent's 'acts are committed in the course of or within the scope of the agent's employment.'" *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 493-494 (10th Cir. 2012) (*quoting Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (emphasis in original)).

### A. Bolin was not acting as agent for Plantsborough, and Plantsborough has not purposefully availed itself of the privilege of conducting activities in Colorado.

OI has not alleged that Plantsborough purposefully availed itself of the privilege of conducting business in Colorado. Instead, it bases its jurisdictional arguments on its conclusory allegations that Bolin was acting as Plantsborough's agent. (*See* ECF 102 ¶¶ 5(b), (d).) This is not so.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1250-1251 (10th Cir. 2020) (quoting Restatement (Third) of Agency § 1.01); *see also* Restatement (Second) of Agency § 1(1) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."). "An agent is not simply someone who acts to benefit another person. Anyone who provides services or goods is expected to benefit us." *Id.* at 1251. Rather, "[c]entral to the notion of agency is that the agent acts 'on behalf of' the principal." *Id.* "A principal's vicarious liability for his agent's conduct arises under the doctrine of respondeat superior." *Huenink v. Rice*, 859 F. Supp. 1398, 1405 (D. Kan.

10

1994). A principal's liability for his agent's conduct is determined by asking "whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the 'right to direct and control' the agent's activities." *Brinkley v. Farmers Elevator Mut'l Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir. 1973).

Bolin was not acting at Plantsborough's agent when he committed the conduct at issue in this lawsuit. As the contract attached to OI's Amended Complaint makes clear, Bolin's relationship with Plantsborough related to the operation of an online retail plant business. (*See* Movant's Appx. at pp. 74-75 – outside.com Agreement (describing intent to operate an ecommerce site to "sell plants directly to the public"); *see also id.* at 8-9 – plants.com Agreement (same).) Plantsborough operated the Domain from 2019 until 2021 as a live-plant ecommerce site. (Movant's Appx. at p. 2 – McCorkle Decl. ¶ 8.)  In 2021, however, it was decided that the site was not profitable and should be shut down. (*Id.* at p. 3 ¶ 13.) Around the same time, Plantsborough considered selling the Domain. (*Id.* at p. 3-4 ¶¶ 14.) However, instead, at Bolin's request, Plantsborough gave Bolin an option to purchase the Domain for $3,000,000. (*Id.* ¶¶ 14-15.) Pursuant to the parties' option arrangement, Bolin, acting on his own and through his company, StrategyWerks, would have the opportunity to build a "software content platform and software ecommerce platform" using the Domain. (*Id.* at pp. 68-69 – Email chain re: Note on Outside.com.) If successful, he would purchase the Domain from Plantsborough at the Option price. If Bolin was unsuccessful, the Domain would revert to Plantsborough and Plantsborough would sell the Domain on the open market. (*See id.*)

11

Over the next few years, Plantsborough conducted zero business. (*Id.* at p. 4 – McCorkle Decl. ¶ 16.) It had no employees. (*Id.*) It had neither revenue nor expenses. (*Id.*) It did not file tax returns. (*Id.*) And it certainly was not managing or directing Bolin's activities. (*Id.* ¶¶ 17-18.) Bolin acted of his own accord using the Domain to further his own interest relative to the Domain and to the Plaintiff. (*See id.* ¶¶ 19. 23, 25.) Plantsborough did not know of (1) the communications directed to OI about a sale of the Domain, (2) any communications with Westlake at all, (3) any communications between Westlake and OI, (4) any communications with GoDaddy or others about selling the Domain, and (4) it did not even know the Domain had been listed for sale at all. (*Id.* ¶¶ 28, 35.) No activity alleged in this case was done on behalf of Plantsborough.

In an attempt to establish an agency relationship, OI alleges that "[u]pon information and belief" a "representative of Plantsborough frequently solicited updates regarding the Infringing Domain Name from Bolin." (ECF 102 ¶ 25.) However, these communications do not establish an agency relationship. On occasion, Bolin and Ben McCorkle, a family member of the beneficial owners of Plantsborough communicated. (*See* ECF 91 at 36-63.) However, those communications were for the purpose of finding out if Bolin intended to carry out his intent to purchase the Domain and understand an approximate timing of such purchase, and not for Plantsborough to direct, participate in, or authorize any form of trademark infringement or other improper conduct. (*See id.*; *see also* Movant's Appx. at p. 4 – McCorkle Decl. ¶ 21.)

On these facts, this case is similar to *Fireman's Fund Insurance Co.*, in which the Court declined to find jurisdiction over the alleged principal. 703 F.3d at 494. In that case, the Court found that although the alleged agent was part of a joint venture with the alleged

12

principal, the alleged agent's actions in the forum "were completely unrelated to the [] joint venture." *Id.* The same rationale applies here. Although Bolin may have been Plantsborough's agent for work performed in connection with the live-plant retail site between 2018 and 2021, Bolin was not acting as Plantsborough's agent when he engaged in the conduct giving rise to this lawsuit. Instead, following the closure of the live-plant ecommerce site, the relationship between Plantsborough and Bolin was much more akin to a landlord and tenant or car owner and car lessee. In those situations, the law is clear that the mere use of an item of property (including a domain name) under a bailment, lease, or purchase right does not create an agency relationship between the user and the owner. *See, e.g.*, *Huenink*, 859 F. Supp. at 1407 (explaining that the "general rule is that a bailor is not liable to third persons for injuries caused by his bailee's negligent use of the bailed property"); *Gilmore v. Grass*, 68 F.2d 150 (10th Cir. 1933) (citing numerous cases to show that the driver of an automobile is not acting as agent of the owner of the automobile or other passenger unless acting under his control).

There is also no viable argument that Bolin had apparent authority to act on Plantsborough's behalf. Apparent authority requires some identification of control by the principal to a reliant third-party. Restatement (Third) of Agency § 3.03 cmt. b (Am. Law. Inst. (2015)) ("[A]n agent's apparent authority originates with expressive conduct by the principal toward a third party . . . [t]he fact that one party performs a service that facilitates the other's business does not constitute such a manifestation."). Apparent authority "turns on the reasonable belief of a third party based on the principal's acts and communications." *Alfaro-Huitron*, 982 F.3d at 1251. Plantsborough never communicated anything to OI. Bolin also

13

never represented that he was operating the Domain on behalf of Plantsborough, and he never offered to sell it on behalf of Plantsborough. At all times he represented himself to be the owner and controller of the Domain as acknowledged by the Plaintiff:

> While Plantsborough had been previously referenced by Mr. Bolin as purchasing the domain in June 2018, *see* ECF No. 15-1 at 2, Mr. Bolin has remained adamant that at the time Outside filed this lawsuit, he personally owned and controlled the Infringing Domain Name and was responsible for activities taken thereon that gave rise to Outside's claims.

(ECF 90 at 6.) As such, OI could not have had a reasonable belief that Bolin was acting as Plantsborough's agent.

According, the claims against Plantsborough should be dismissed because Plantsborough has itself taken no actions toward OI or the State of Colorado that would subject it to jurisdiction in this Court, and Bolin was not acting as Plantsborough's agent when he allegedly engaged in the conduct at issue in this lawsuit.

### B. Exercising jurisdiction over Plantsborough would be unreasonable and contrary to the notions of fair play.

Even if minimum contacts were established, the exercise of jurisdiction must also be reasonable. The reasonableness analysis requires the Court to consider: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F.3d 1244, 1249 (10th Cir. 2000) (citing *Burger King,* 471 U.S. at 477); *OMI Holdings,* 149 F.3d at 1096 (finding personal jurisdiction over Canadian defendant was not reasonable despite a finding of minimum contacts).

14

Requiring Plantsborough to defend itself in Colorado would impose an undue burden on it, as it has no connection to this State, which is 1200 miles from Georgia. Colorado has no compelling interest in adjudicating a dispute involving a Georgia company with no ties to the State, and the Plaintiff's convenience alone is insufficient to justify jurisdiction. Plantsborough did not acquire the Domain with any interest in competing with Plaintiff, and it had no intention to do so. It had no knowledge of Bolin's interactions with OI or any dealings with Colorado. This Court has chosen to exercise control over Bolin, but his actions are separate and independent from Plantsborough and pursuant to his own interest in the enterprise he was developing. Plantsborough respectfully contends that there is no valid claim against Plantsborough at all, but if Plaintiff wishes to pursue separate claims against Plantsborough, then it should have to do so in Georgia, where Plantsborough and its beneficial owners are located.

## **CONCLUSION**

For the foregoing reasons, Defendant Plantsborough respectfully requests that this Court grant its Motion to Dismiss for Lack of Personal Jurisdiction.

Dated: February 12, 2026

DAVIS GRAHAM & STUBBS LLP

*/s/ Emily L. Wasserman*
Emily L. Wasserman
3400 Walnut Street, Suite 700
Denver, CO  80205
Telephone:   303.892.9400
emily.wasserman@davisgraham.com

*Attorneys for Defendant Plantsborough, LLC*

15